

1  JAMES R. EVANS, JR. (Bar No. 119712)
   **FULBRIGHT & JAWORSKI L.L.P.**
2  555 South Flower Street
   Forty-First Floor
3  Los Angeles, California 90071
   Telephone: (213) 892-9200
4  Facsimile: (213) 892-9494
   jevans@fulbright.com
5
   LEWIS S. ROSENBLOOM (*Pro Hac Vice*)
6  DAVID F. WENTZEL (*Pro Hac Vice*)
   **WENTZEL LAW OFFICES**
7  53 W. Jackson Blvd., Suite 1025
   Chicago, IL 60606
8  Telephone: (312) 697-0500
   Facsimile: (312) 697-0505
9

FILED
CLERK, U.S. DISTRICT COURT
AUG - 1 2012
CENTRAL DISTRICT OF CALIFORNIA
BY _____ DEPUTY

10              IN THE UNITED STATES DISTRICT COURT

11            FOR THE CENTRAL DISTRICT OF CALIFORNIA

12                       WESTERN DIVISION

13

14  ELIZABETH ARDEN, INC.,            Case No. CV10-9949 PA-AGR

15              Plaintiff,            Hon. Percy Anderson

16       v.                          **FOURTH AMENDED COMPLAINT**

17  THE MERCHANT OF TENNIS, INC.,
    U.S. MERCHANTS FINANCIAL
18  GROUP, INC., and JEFF GREEN,

19              Defendant.

20

21  And Related Counterclaim.

22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Plaintiff, Elizabeth Arden, Inc. ("Elizabeth Arden"), by its undersigned
2  counsel, complains against the defendants, The Merchant of Tennis, Inc. ("The
3  Merchant"), U.S. Merchants Financial Group, Inc. ("USM"), Jeff Green ("Green"),
4  Diversified Re-Packaging Corp. ("Diversified"), and U.S. Merchants Canada
5  ("USMC") as follows:

## PARTIES, JURISDICTION AND VENUE

6
7    1.    Elizabeth Arden is a Florida corporation with its principal place of
8  business in Miramar, Florida.
9    2.    The Merchant is a California corporation with its principal place of
10  business in Beverly Hills, California.
11    3.    USM is a California corporation with its principal place of business in
12  Beverly Hills, California.
13    4.    Green is the president and principal shareholder of The Merchant and
14  USM, and a citizen of California.
15    5.    Jurisdiction is proper in this Court under 28 U.S.C. § 1332 because the
16  parties are citizens of different states and the amount in controversy exceeds
17  $75,000 exclusive of interest and attorney fees.  As to Count LVIII, jurisdiction is
18  proper in this Court under 28 U.S.C. § 1331 because the claim arises under the laws
19  of the United States, namely 18 U.S.C. § 1964(c).
20    6.    Venue is proper in the Central District of California under 28 U.S.C. §
21  1391(a)(1) and §1391(b)(1) because The Merchant, USM, and Green all reside in
22  this district.

## FACTS COMMON TO ALL COUNTS

23
24    7.    Elizabeth Arden is a marketer and distributor of cosmetics and
25  personal care products.  For many years Elizabeth Arden has supplied products to
26  The Merchant for repackaging and resale to Costco Wholesale Corporation
27  ("Costco") for its retail warehouse clubs in the United States, Canada, Great
28  Britain, Australia, Mexico, Korea, Japan and Taiwan; and also to Sam's Club, a

1  division of Walmart Stores, Inc. ("Sam's), for its retail warehouse clubs in the

2  United States and Canada.

3       8.    Costco and Sam's purchase Elizabeth Arden's products from The

4  Merchant (or one of its affiliated entities) instead of from Elizabeth Arden directly

5  because warehouse clubs have specialized in-store display and merchandizing

6  systems. Elizabeth Arden's standard retail packaging does not satisfy Costco's and

7  Sam's in-store display requirements. Consequently, Costco and Sam's arrange for

8  The Merchant (or one of its affiliates) to repackage the products before delivery to

9  their warehouse clubs.

10       9.    The Merchant buys the products directly from Elizabeth Arden. The

11  Merchant or one of its affiliates repackages the products to meet Costco and Sam's

12  requirements. The Merchant (or one of its affiliates) sells the repackaged goods to

13  Costco and Sam's, and receives payment within an agreed time period (within 30

14  days of the date of shipment in the case of Costco and believed to be a within a

15  similar timeframe in the case of Sam's). The Merchant then pays Elizabeth Arden

16  for the goods.

17       10.    There is no master contract or distributorship agreement that governs

18  the relationship between Elizabeth Arden and The Merchant. Orders are typically

19  filled and shipped under specific "Program Purchase Orders" that include the item

20  number, product name, quantity, unit price, and P.O. number. Depending on the

21  program involved, The Merchant's payment terms are typically net 75 to 150 days,

22  as measured from the date that Elizabeth Arden ships the goods to The Merchant.

23       11.    On occasion, Elizabeth Arden enters into agreements with Costco to

24  participate in Costco's Multi Vendor Mailings ("MVM"), which are coupon

25  booklets that Costco mails to its membership at regular intervals. Elizabeth Arden

26  and Costco agree on what product(s) will be included in a particular MVM; the

27  value of the coupon (stated as a specific dollar amount); and the period of time

28  during which the coupon will be offered.

12.    For each coupon promotion, Costco tallies the number of coupons redeemed by consumers during the promotional period.  Costco then deducts the aggregate value of these coupons from its payment to The Merchant (or one of its affiliates, as the case may be) on a weekly basis.  The Merchant, in turn, deducts the identical amount from its payment to Elizabeth Arden.

13.    Under the terms of Elizabeth Arden's agreement with The Merchant, as established by the U.C.C. and the parties' custom, practice and course of dealing over the years, The Merchant may deduct from its payments to Elizabeth Arden only the following: (1) the amount Costco actually deducts from its payment to The Merchant (or its affiliates) for redeemed coupons; (2) "margin adjustments" specifically agreed to between Elizabeth Arden and Costco, usually to reflect Elizabeth Arden's agreed contribution to the cost of printing and mailing of the MVM; and (3) the cost of products returned by Costco to The Merchant (or one of its affiliates), provided the returns are approved by Elizabeth Arden and provided further that Costco actually deducts the cost of the returned products from its payment to The Merchant (or one of its affiliates); (4) other product-related issues such as concealed shortages, provided that The Merchant notified Elizabeth Arden of the problem within a reasonable time and provided further that The Merchant supplied Elizabeth Arden with satisfactory evidence of the problem.

14.    With respect to products sold to Sam's, under the terms of Elizabeth Arden's agreement with The Merchant, as established by the U.C.C. and the parties' custom, practice and course of dealing over the years, The Merchant may properly deduct from its  payments to Elizabeth Arden only the following: (1) the cost of products returned by Sam's to The Merchant (or one of its affiliates), provided the returns are approved by Elizabeth Arden and provided that Sam's actually deducts the cost of the returned products from its payment to The Merchant (or its affiliates); and (2) certain freight costs and other certain expenses specifically agreed to in advance by Elizabeth Arden.

1    15.    The Merchant sends periodic debit memos to Elizabeth Arden listing

2    amounts deducted from The Merchant's payment, along with the supporting

3    documentation evidencing the reasons for the deductions.

4    16.    When sending payment, The Merchant specifies on the check stub the

5    open invoices to which the payment applies and lists any deductions taken and the

6    corresponding debit memos.    The amount of the check is thus "net" of the

7    deductions taken.

8    17.    In accordance with the parties' custom and practice, upon receipt of a

9    payment from The Merchant that lists deductions taken, Elizabeth Arden applies a

10    provisional credit to the invoice or invoices in question while it investigates the

11    validity of the deduction.  Upon verification that the deductions are appropriate, the

12    deducted amounts are applied to open invoices and treated the same as cash

13    payments.    Accordingly, the submission of a valid debit note listing a valid

14    deduction is, for purposes of the parties' agreement, considered performance (or

15    partial performance, as the case may be) of The Merchant's obligation to pay the

16    open invoice.

17    18.    As detailed below, in many instances, Elizabeth Arden's investigation

18    revealed that deductions taken by The Merchant were invalid because they were

19    duplicative of prior deductions for which credit had already been given to The

20    Merchant.   Other times, The Merchant submitted debit notes and deductions for

21    items other than Elizabeth Arden products (such as Callaway golf gloves), or for

22    freight charges for shipments or transfers that never occurred.  In all such instances,

23    The Merchant's submission of the invalid debit note and deduction was a violation

24    of the parties' agreement, and accordingly Elizabeth Arden reversed the provisional

25    credit.

26    19.    Because the reversal of a provisional credit effectively canceled the

27    "payment," the invoice or invoices to which the provisional credit was applied

28    remained unpaid.  In all such instances alleged herein, the due date for payment of

the invoice had already passed. Accordingly, the full amount of the reversed credit
(i.e., the unpaid invoice or portion thereof) became immediately due and owing.

### COUNT I - BREACH OF CONTRACT

### (Purchase Order No. 28197; Invoice No. 2768578 And 2764502)

20.    On or around December 4, 2007, The Merchant ordered 7,896 units of
Millennium Day Renewal Emulsion from Elizabeth Arden under Purchase Order
No. 28197.

21.    On or around December 5, 2007, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
206(1)(b).

22.    The Merchant accepted the goods.

23.    Under the terms of the parties' agreement, payment in the amount of
$53,692.80 was due on February 17, 2008.

24.    Elizabeth Arden has performed all obligations on its part to be
performed under the contract.

25.    The Merchant has failed to pay the $53,692.80[1], which is due and
owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
MERCHANT in the amount of $53,692.80 plus prejudgment interest as allowed by
law.

### COUNT II - BREACH OF CONTRACT

### (Purchase Order No. 30273; Invoice No. 3152178)

26.    On or around March 27, 2008, The Merchant ordered 22,816 units of
Ceramide Face Caps from Elizabeth Arden under Purchase Order No. 30273.

27.    On or around March 27, 2008, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

---

[1]    For all counts herein, the sums owed by The Merchant are stated in U.S.
dollars unless otherwise denoted by use of CA$.

1  206(1)(b).

2      28.    The Merchant accepted the goods.

3      29.    Under the terms of the parties' agreement, payment in the amount of

4  $500,583.04 was due on June 10, 2008.

5      30.    Elizabeth Arden has performed all obligations on its part to be

6  performed under the contract.

7      31.    The Merchant has failed to pay the $500,583.04, which is due and

8  owing.

9      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

10  MERCHANT in the amount of $500,583.04 plus prejudgment interest as allowed

11  by law.

12                      **COUNT III - BREACH OF CONTRACT**

13            **(Purchase Order No. 30990; Invoice No. 3338776)**

14      32.    On or around May 19, 2008, The Merchant ordered 32,400 units each

15  of Millennium Day Renewal Emulsion, Millennium Night Renewal Cream, and

16  Millennium Eye Renewal Cream from Elizabeth Arden under Purchase Order No.

17  30990.

18      33.    On or around May 30, 2008, Elizabeth Arden shipped the goods

19  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

20  206(1)(b).

21      34.    The Merchant accepted the goods.

22      35.    Under the terms of the parties' agreement, payment in the amount of

23  $710,856.00 was due on August 13, 2008.  On or around September 29, 2010, The

24  Merchant sent payment in the amount of $4,127.81 against the invoice, leaving

25  $706,728.19 due and owing.

26      36.    Elizabeth Arden has performed all obligations on its part to be

27  performed under the contract.

28      37.    The Merchant has failed to pay the $706,728.l9, which is due and

1  owing.

2      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

3  MERCHANT in the amount of $706,728.l9 plus prejudgment interest as allowed by

4  law.

5              **COUNT IV - BREACH OF CONTRACT**

6            **(Purchase Order No. 30993; Invoice No. 3417631)**

7      38.    On or around May 28, 2008, The Merchant ordered 32,400 units of

8  Ceramide Advanced Time Complex Face Caps from Elizabeth Arden under

9  Purchase Order No. 30993.

10     39.    On or around June 24, 2008, Elizabeth Arden shipped the goods

11 ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

12 206(1)(b).

13     40.    The Merchant accepted the goods.

14     41.    Under the terms of the parties' agreement, payment in the amount of

15 $710,856.00 was due on September 10, 2008.

16     42.    Elizabeth Arden has performed all obligations on its part to be

17 performed under the contract.

18     43.    The Merchant has failed to pay the $710,856, which is due and owing.

19     **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

20 MERCHANT in the amount of $710,856 plus prejudgment interest as allowed by

21 law.

22             **COUNT V - BREACH OF CONTRACT**

23           **(Purchase Order No. 31826; Invoice No. 576812)**

24     44.    On or around July 31, 2008, The Merchant ordered 20,000 units of

25 Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under

26 Purchase Order No. 31826.

27     45.    On or around August 8, 2008, Elizabeth Arden shipped the goods

28 ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

1  206(1)(b).

2      46.    The Merchant accepted the goods.

3      47.    Under the terms of the parties' agreement, payment in the amount of

4  CA$386,484 was due on December 6, 2008.

5      48.    On or around December 1, 2008, The Merchant sent payment to

6  Elizabeth Arden against the invoice and listed on the check stub deductions totaling

7  CA$51,600.

8      49.    Pursuant to the parties' custom and practice, Elizabeth Arden applied a

9  provisional credit to the invoice in the amount of the deductions (CA$51,600)

10  pending investigation and verification of the deductions.

11      50.    Elizabeth Arden subsequently determined that the deductions were

12  invalid and, accordingly, reversed the provisional credit.

13      51.    Elizabeth Arden has repeatedly demanded payment of the invoice

14  balance of CA$51,600, but The Merchant has failed to pay this amount or any part

15  thereof.

16      52.    Elizabeth Arden has performed all obligations on its part to be

17  performed under the contract.

18      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

19  MERCHANT in the amount of CA$51,600 plus prejudgment interest as allowed by

20  law.

21  **COUNT VI - BREACH OF CONTRACT**

22  **(Purchase Order No. 32309; Invoice No. 3811534)**

23      53.    On or around September 18, 2008, The Merchant ordered 62,640 units

24  of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden

25  under Purchase Order No. 32309.

26      54.    On or around September 25, 2008, Elizabeth Arden shipped the goods

27  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

28  206(1)(b).

DOCUMENT PREPARED
ON RECYCLED PAPER

55.    The Merchant accepted the goods.

56.    Under the terms of the parties' agreement, payment in the amount of $721,612.80 was due on December 9, 2008.

57.    On or around November 27, 2009, The Merchant sent payment in the amount of $517,663.20 to Elizabeth Arden against the invoice and listed on the check stub deductions totaling $203,949.60.

58.    Pursuant to the parties' customs and practice, Elizabeth Arden applied a provisional credit to the invoice in the amount of the deductions ($203,949.60) pending investigation and verification of the deductions.

59.    Elizabeth Arden subsequently determined that $176,786.40 of the deductions were invalid and, accordingly, reversed the provisional credit.

60.    Elizabeth Arden has repeatedly demanded payment of the invoice balance of $176,786.40, but The Merchant has failed to pay this amount or any part thereof.

61.    Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $176,786.40 plus prejudgment interest as allowed by law.

## COUNT VII - BREACH OF CONTRACT
### (Purchase Order No. 32310; Invoice No. 3810584)

62.    On or around September 18, 2008, The Merchant ordered 62,640 units of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under Purchase Order No. 32310.

63.    On or around September 25, 2008, Elizabeth Arden promptly shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

64.    The Merchant accepted the goods.

65.    Under the terms of the parties' agreement, payment in the amount of $721,612.80 was due on December 9, 2008.

66.    On or around October 28, 2009, The Merchant sent payment to Elizabeth Arden in the amount of $471,412.23 against the invoice and listed on the check stub deductions totaling $250,200.57.

67.    Pursuant to the parties' customs and practice, Elizabeth Arden applied a provisional credit to the invoice in the amount of the deductions ($250,200.57) pending investigation and verification of the deductions.

68.    Elizabeth Arden subsequently determined that $205,531.21 of the deductions were invalid and, accordingly, reversed the provisional credit.

69.    Elizabeth Arden has repeatedly demanded payment of the invoice balance of $205,531.21, but The Merchant has failed to pay this amount or any part thereof.

70.    Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $205,531.21 plus prejudgment interest as allowed by law.

## COUNT VIII - BREACH OF CONTRACT
### (Purchase Order No. 32311; Invoice 3835753)

71.    On or around September 18, 2008, The Merchant ordered 60,973 units of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under Purchase Order No. 32311.

72.    On or around September 28, 2008, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

73.    The Merchant accepted the goods.

74.    Under the terms of the parties' agreement, payment in the amount of

1  $702,408.96 was due on December 10, 2008.

2      75.    On or around December 30, 2009, The Merchant sent payment to

3  Elizabeth Arden in the amount of $186,467.69 against several open invoices,

4  including Invoice No. 3835753, and listed on the check stub deductions totaling

5  $1,634,882.

6      76.    Pursuant to the parties' customs and practice, Elizabeth Arden applied

7  a provisional credit to the invoices covered by the payment, including Invoice No.

8  3835753, in the amount of the deductions ($1,634,882) pending investigation and

9  verification of the deductions.

10     77.    Elizabeth Arden subsequently determined that $702,408.96 of the

11  deductions were invalid and, accordingly, reversed the provisional credit applied to

12  Invoice No. 3835753.

13     78.    Elizabeth Arden has repeatedly demanded payment of the invoice

14  amount of $702,408.96, but The Merchant has failed to pay this amount or any part

15  thereof.

16     79.    Elizabeth Arden has performed all obligations on its part to be

17  performed under the contract.

18     **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

19  MERCHANT in the amount of $702,408.96 plus prejudgment interest as allowed

20  by law.

### COUNT IX - BREACH OF CONTRACT

### (Purchase Order No. 33029; Invoice No. 4285821)

80.    On or around December 8, 2008, The Merchant ordered 62,640 units

of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden

under Purchase Order No. 33029.

81.    On or around December 23, 2008, Elizabeth Arden shipped the goods

ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

206(1)(b).

DOCUMENT PREPARED
ON RECYCLED PAPER

1    82.    The Merchant accepted the goods.

2    83.    Under the terms of the parties' agreement, payment in the amount of

3    $721,618.80 was due on March 8, 2009.

4    84.    On or around January 28, 2010, The Merchant sent payment to

5    Elizabeth Arden in the amount of $456,588.82 against the invoice and listed on the

6    check stub deductions totaling $265,023.98.

7    85.    Pursuant to the parties' custom and practice, Elizabeth Arden applied a

8    provisional credit to the invoice in the amount of the deductions ($265,023.98)

9    pending investigation and verification of the deductions.

10    86.    Elizabeth Arden subsequently determined that $259,219.79 of the

11    deductions were invalid and, accordingly, reversed the provisional credit.

12    87.    Elizabeth Arden has repeatedly demanded payment of the invoice

13    balance of $259,219.79, but The Merchant has failed to pay this amount or any part

14    thereof.

15    88.    Elizabeth Arden has performed all obligations on its part to be

16    performed under the contract.

17    **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

18    MERCHANT in the amount of $259,219.79 plus prejudgment interest as allowed

19    by law.

20    ## COUNT X - BREACH OF CONTRACT

21    ### (Purchase Order No. 33033; Invoice No. 4317074)

22    89.    On or around December 8, 2008, The Merchant ordered 24,160 units

of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden

23    under Purchase Order No. 33033.

24    90.    On or around December 23, 2008, Elizabeth Arden shipped the goods

25    ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

26    206(1)(b).

27    91.    The Merchant accepted the goods.

28

92.    Under the terms of the parties' agreement, payment in the amount of $278,323.20 was due on March 8, 2009.

93.    On or around April 29, 2010, The Merchant sent payment to Elizabeth Arden in the amount of $28,950.03 against the invoice and listed on the check stub deductions totaling $249,373.17.

94.    Pursuant to the parties' custom and practice, Elizabeth Arden applied a provisional credit to the invoice in the amount of the deductions ($249,373.17) pending investigation and verification of the deductions.

95.    Elizabeth Arden subsequently determined that $173,091.72 of the deductions were invalid and, accordingly, reversed the provisional credit.

96.    Elizabeth Arden has repeatedly demanded payment of the invoice balance of $173,091.72, but The Merchant has failed to pay this amount or any part thereof.

97.    Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $173,091.72 plus prejudgment interest as allowed by law.

## COUNT XI - BREACH OF CONTRACT
### (Purchase Order No. 33035; Invoice No. 4289763)

98.    On or around December 8, 2008, The Merchant ordered 62,640 units of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under Purchase Order No. 33035.

99.    On or around December 23, 2008, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

100.    The Merchant accepted the goods.

101.    Under the terms of the parties' agreement, payment in the amount of

DOCUMENT PREPARED ON RECYCLED PAPER

52171048.1

FOURTH AMENDED COMPLAINT

1    $721,612.80 was due on March 8, 2009.

2      102.   On or around March 30, 2010, The Merchant sent payment to

3 Elizabeth Arden in the amount of $275,848.66 against the invoice and listed on the

4 check stub deductions totaling $445,764.14.

5      103.   Pursuant to the parties' custom and practice, Elizabeth Arden applied a

6 provisional credit to the invoice in the amount of the deductions ($445,764.14)

7 pending investigation and verification of the deductions.

8      104.   Elizabeth Arden subsequently determined that $259,932.48 of the

9 deductions were invalid and, accordingly, reversed the provisional credit in this

10 amount.

11      105.   Elizabeth Arden has repeatedly demanded payment of the invoice

12 balance of $259,932.48, but The Merchant has failed to pay this amount or any part

13 thereof.

14      106.   Elizabeth Arden has performed all obligations on its part to be

15 performed under the contract.

16      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

17 MERCHANT in the amount of $259,932.48 plus prejudgment interest as allowed

18 by law.

### COUNT XII - BREACH OF CONTRACT

### (Purchase Order No. 33032; Invoice No. 4320340)

19
20      107.   On or around December 8, 2008, The Merchant ordered 62,640 units

21 of Visible Difference Refining Moisture Cream Complex specified goods from

22 Elizabeth Arden under Purchase Order No. 33032.

23      108.   On or around December 23, 2008, Elizabeth Arden shipped the goods

24 ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

25 206(1)(b).

26      109.   The Merchant accepted the goods.

27      110.   Under the terms of the parties' agreement, payment in the amount of

28

1 | $721,612.80 was due on March 8, 2009.

2 |     111. On or around June 29, 2010, The Merchant sent payment to Elizabeth

3 | Arden in the amount of $353,271.30 against the invoice and listed on the check stub

4 | deductions totaling in excess of the remaining balance of the invoice.

5 |     112. Pursuant to the parties' custom and practice, Elizabeth Arden applied a

6 | provisional credit to the invoice in the amount of the remaining balance

7 | ($368,341.50) pending investigation and verification of the deductions.

8 |     113. Elizabeth Arden subsequently determined that the deductions were

9 | invalid and, accordingly, reversed the provisional credit.

10 |     114. Elizabeth Arden has repeatedly demanded payment of the invoice

11 | balance of $368,341.50, but The Merchant has failed to pay this amount or any part

12 | thereof.

13 |     115. Elizabeth Arden has performed all obligations on its part to be

14 | performed under the contract.

15 |     **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

16 | MERCHANT in the amount of $368,341.50 plus prejudgment interest as allowed

17 | by law.

### COUNT XIII - BREACH OF CONTRACT

### (Purchase Order No. 33031; Invoice No. 4294528)

18 |
19 |
20 |     116. On or around December 8, 2008, The Merchant ordered 62,640 units
of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden

21 | under Purchase Order No. 33031.

22 |
23 |     117. On or around December 23, 2008, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

24 | 206(1)(b).

25 |     118. The Merchant accepted the goods.

26 |     119. Under the terms of the parties' agreement, payment in the amount of

27 | $721,612.80 was due on March 8, 2009.

28 |

DOCUMENT PREPARED
ON RECYCLED PAPER

120. On or around June 29, 2010, The Merchant sent a check stub to Elizabeth Arden that listed deductions in excess of the amount of the invoice.

121. Pursuant to the parties' custom and practice, Elizabeth Arden applied a provisional credit to the invoice for the full amount pending investigation and verification of the deductions.

122. Elizabeth Arden subsequently determined that the deductions were invalid and, accordingly, reversed the provisional credit.

123. Elizabeth Arden has repeatedly demanded payment of the invoice amount of $721,612.80, but The Merchant has failed to pay this amount or any part thereof.

124. Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $721,612.80 plus prejudgment interest as allowed by law.

## COUNT XIV - BREACH OF CONTRACT

### (Purchase Order No. 33111; Invoice No. 4328592)

125. On or around December 17, 2008, The Merchant ordered 4,512 units each of Millennium Day Renewal Emulsion, Millennium Night Renewal Cream, and Millennium Eye Renewal Cream from Elizabeth Arden under Purchase Order No. 33111.

126. On or around December 23, 2008, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

127. The Merchant accepted the goods.

128. Under the terms of the parties' agreement, payment in the amount of $98,993.28 was due on March 8, 2009.

129. On or around June 29, 2010, The Merchant sent a check stub to

DOCUMENT PREPARED
ON RECYCLED PAPER

1    Elizabeth Arden that listed deductions in excess of the amount of the invoice.

2        130.   Pursuant to the parties' custom and practice, Elizabeth Arden applied a

3    provisional credit to the invoice for the full amount pending investigation and

4    verification of the deductions.

5        131.   Elizabeth Arden subsequently determined that the deductions were

6    invalid and, accordingly, reversed the provisional credit.

7        132.   Elizabeth Arden has repeatedly demanded payment of the invoice

8    amount of $98,993.28, but The Merchant has failed to pay this amount or any part

9    thereof.

10       133.   Elizabeth Arden has performed all obligations on its part to be

11   performed under the contract.

12       **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

13   MERCHANT in the amount of $98,993.28 plus prejudgment interest as allowed by

14   law.

### COUNT XV - BREACH OF CONTRACT

### (Purchase Order No. 33177; Invoice No. 4356819)

134.   On or around December 30, 2008, The Merchant ordered 18,114 units
of Visible Difference Refining Moisture Cream Complex from Elizabeth Arden
under Purchase Order No. 33177.

135.   On or around December 31, 2008, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
206(1)(b).

136.   The Merchant accepted the goods.

137.   Under the terms of the parties' agreement, payment in the amount of
$208,673.28 was due on March 16, 2009.

138.   On or around June 29, 2010, The Merchant sent a check stub to
Elizabeth Arden that listed deductions in excess of the amount of the invoice.

139.   Pursuant to the parties' custom and practice, Elizabeth Arden applied a

DOCUMENT PREPARED
ON RECYCLED PAPER

1  provisional credit to the invoice for the full amount pending investigation and
2  verification of the deductions.

3      140.  Elizabeth Arden subsequently determined that the deductions were
4  invalid and, accordingly, reversed the provisional credit.

5      141.  Elizabeth Arden has repeatedly demanded payment of the invoice
6  amount of $208,673.28, but The Merchant has failed to pay this amount or any part
7  thereof.

8      142.  Elizabeth Arden has performed all obligations on its part to be
9  performed under the contract.

10      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
11  MERCHANT in the amount of $208,673.28 plus prejudgment interest as allowed
12  by law.

### COUNT XVI - BREACH OF CONTRACT
### (Purchase Order No. 33757; Invoice No. 4663004)

13
14      143.  On or around March 23, 2009, The Merchant ordered 62,640 units of
15  Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under
16  Purchase Order No. 33757.

17      144.  On or around March 25, 2009, Elizabeth Arden shipped the goods
18  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
19  206(1)(b).

20      145.  The Merchant accepted the goods.

21      146.  Under the terms of the parties' agreement, payment in the amount of
22  $721,612.80 was due on June 8, 2009.

23      147.  Elizabeth Arden has performed all obligations on its part to be
24  performed under the contract.

25      148.  The Merchant has failed to pay the $721,612.80, which is due and
26  owing.

27      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
28

1  MERCHANT in the amount of $721,612.80 plus prejudgment interest as allowed
2  by law.

### COUNT XVII - BREACH OF CONTRACT

### (Purchase Order No. 33759; Invoice No. 4663235)

149.    On or around March 23, 2009, The Merchant ordered 62,640 units of
Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under
Purchase Order No. 33759.

150.    150.    On or around March 25, 2009, Elizabeth Arden shipped the
goods ordered by The Merchant, which operated as an acceptance pursuant to UCC
2-206(1)(b).

151.    The Merchant accepted the goods.

152.    Under the terms of the parties' agreement, payment in the amount of
$721,612.80 was due on June 8, 2009.

153.    Elizabeth Arden has performed all obligations on its part to be
performed under the contract.

154.    The Merchant has failed to pay the $721,612.80, which is due and
owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
MERCHANT in the amount of $721,612.80 plus prejudgment interest as allowed
by law.

### COUNT XVIII - BREACH OF CONTRACT

### (Purchase Order No. 33755; Invoice No. 4663737)

155.    On or around March 23, 2009, The Merchant ordered 62,640 units of
Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under
Purchase Order No. 33755.

156.    On or around March 26, 2009, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
206(1)(b).

157.    The Merchant accepted the goods.

158.  Under the terms of the parties' agreement, payment in the amount of $721,612.80 was due on June 9, 2009.

159.  Elizabeth Arden has performed all obligations on its part to be performed under the contract.

160.  The Merchant has failed to pay the $721,612.80, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $721,612.80 plus prejudgment interest as allowed by law.

<u>**COUNT XIX - BREACH OF CONTRACT**</u>

**(Purchase Order No. 33795: Invoice No. 670907)**

161.  On or around March 25, 2009, The Merchant ordered 10,320 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 5,160 units of Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 33795.

162.  On or around March 27, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

163.  The Merchant accepted the goods.

164.  Under the terms of the parties' agreement, payment in the amount of CA$215,384.46 was due on July 25, 2009.

165.  On or around February 25, 2010, The Merchant sent payment to Elizabeth Arden in the amount of CA$211,842.54 against the invoice and listed on the check stub deductions totaling CA$3,541.92.

166.  Pursuant to the parties' custom and practice, Elizabeth Arden applied a provisional credit to the invoice in the amount of the deductions (CA$3,541.92) pending investigation and verification of the deductions.

167.  Elizabeth Arden subsequently determined that the deductions were

DOCUMENT PREPARED ON RECYCLED PAPER

1  invalid and, accordingly, reversed the provisional credit.

2      168.  Elizabeth Arden has repeatedly demanded payment of the invoice

3  balance of CA$3,541.91, but The Merchant has failed to pay this amount or any

4  part thereof.

5      169.  Elizabeth Arden has performed all obligations on its part to be

6  performed under the contract.

7      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

8  MERCHANT in the amount of CA$3,541.92 plus prejudgment interest as allowed

9  by law.

## COUNT XX - BREACH OF CONTRACT

### (Purchase Order No. 34553; Invoice No. 704699)

10

11

12      170.  On or around June 8, 2009, The Merchant ordered 15,000 units of

13  Visible Difference Refining Moisture Cream Complex from Elizabeth Arden under

14  Purchase Order No. 34553.

15      171.  On or around June 15, 2009, Elizabeth Arden shipped the goods

16  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

17  206(1)(b).

18      172.  The Merchant accepted the goods.

19      173.  Under the terms of the parties' agreement, payment in the amount of

20  CA$261,757.13 was due on October 13, 2009.  On or around September 29, 2010,

21  The Merchant sent payment in the amount of CA$148,186.26 (including allowable

22  deductions) against the invoice, leaving CA$113,570.87 due and owing.

23      174.  Elizabeth Arden has performed all obligations on its part to be

24  performed under the contract.

25      175.  The Merchant has failed to pay the CA$261,757.13, which is due and

26  owing.

27      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

28  MERCHANT in the amount of CA$261,757.13 plus prejudgment interest as

1  allowed by law.

## COUNT XXI - BREACH OF CONTRACT

### (Purchase Order No. 34565; Invoice No. 704745)

176.  On or around June 9, 2009, The Merchant ordered 12,480 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 6,240 units of Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 34565.

177.  On or around June 15, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

178.  The Merchant accepted the goods.

179.  Under the terms of the parties' agreement, payment in the amount of CA$260,464.93 was due on October 13, 2009.

180.  Elizabeth Arden has performed all obligations on its part to be performed under the contract.

181.  The Merchant has failed to pay the CA$260,464.93, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$260,464.93 plus prejudgment interest as allowed by law.

## COUNT XXII - BREACH OF CONTRACT

### (Purchase Order No. 34566; Invoice No. 704746)

182.  On or around June 9, 2009, The Merchant ordered 12,960 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 6,480 units of Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 34566.

183.  On or around June 15, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

DOCUMENT PREPARED
ON RECYCLED PAPER

1      184.   The Merchant accepted the goods.

2      185.   Under the terms of the parties' agreement, payment in the amount of

3  CA$270,482.81 was due on October 13, 2009.

4      186.   Elizabeth Arden has performed all obligations on its part to be

5  performed under the contract.

6      187.   The Merchant has failed to pay the CA$270,482.81, which is due and

7  owing.

8      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

9  MERCHANT in the amount of CA$270,482.81 plus prejudgment interest as

10  allowed by law.

## COUNT XXIII - BREACH OF CONTRACT

### (Purchase Order No. 34564; Invoice No. 704744)

188.   On or around June 9, 2009, The Merchant ordered 12,480 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 6,240 units of Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 34564.

189.   On or around June 15, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

190.   The Merchant accepted the goods.

191.   Under the terms of the parties' agreement, payment of the invoice balance in the amount of CA$260,464.93 was due on October 13, 2009.

192.   On or around October 13, 2009, The Merchant sent payment in the amount of CA$169,250.93 to Elizabeth Arden against the invoice and listed on the check stub deductions totaling CA$91,214.

193.   Pursuant to the parties' custom and practice, Elizabeth Arden applied a provisional credit to the invoice in the amount of the deductions (CA$91,214) pending investigation and verification of the deductions.

DOCUMENT PREPARED
ON RECYCLED PAPER

194.  Elizabeth Arden subsequently determined that the deductions were invalid and, accordingly, reversed the provisional credit.

195.  Elizabeth Arden has repeatedly demanded payment of the invoice balance of CA$91,214, but The Merchant has failed to pay this amount or any part thereof.

196.  Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$91,214 plus prejudgment interest as allowed by law.

## COUNT XXIV - BREACH OF CONTRACT

### (Purchase Order No. 34563; Invoice No. 704743)

197.  On or around June 9, 2009, The Merchant ordered 12,480 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 6,240 units of Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 34563.

198.  On or around June 15, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

199.  The Merchant accepted the goods.

200.  Under the terms of the parties' agreement, payment in the amount of CA$260,464.93 was due on October 13, 2009.

201.  On or around April 29, 2010, The Merchant sent payment to Elizabeth Arden in the amount of CA$155,963.13 against the invoice and listed on the check stub deductions totaling CA$104,501.50.

202.  Pursuant to the parties' custom and practice, Elizabeth Arden applied a provisional credit to the invoice in the amount of the deductions (CA$104,501.50) pending investigation and verification of the deductions.

DOCUMENT PREPARED
ON RECYCLED PAPER

203.  Elizabeth Arden subsequently determined that the deductions were invalid and, accordingly, reversed the provisional credit.

204.  Elizabeth Arden has repeatedly demanded payment of the invoice balance of CA$104,501.50, but The Merchant has failed to pay this amount or any part thereof.

205.  Elizabeth Arden has performed all obligations on its part to be performed under the contract.

206.  The Merchant has failed to pay the CA$104,501.50, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$104,501.50 plus prejudgment interest as allowed by law.

## COUNT XXV - BREACH OF CONTRACT

### (Purchase Order No. 34557; Invoice No. 4986574)

207.  On or around June 9, 2009, The Merchant ordered 5,040 units each of Millennium Day Renewal Emulsion, Millennium Night Renewal Cream, and Millennium Eye Renewal Cream from Elizabeth Arden under Purchase Order No. 34557.

208.  On or around June 25, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

209.  The Merchant accepted the goods.

210.  Under the terms of the parties' agreement, payment in the amount of $121,514.40 was due on September 8, 2009.

211.  On or around February 25, 2010, The Merchant sent payment to Elizabeth Arden in the amount of $174,326.50 against several open invoices, including Invoice No. 4986574, and listed on the check stub deductions totaling $1,119,642.70.

212.    Pursuant to the parties' custom and practice, Elizabeth Arden applied a provisional credit to the invoices covered by the payment, including Invoice No. 4986574, in the amount of the deductions ($1,119,642.70) pending investigation and verification of the deductions.

213.    Elizabeth Arden subsequently determined that $12,758.50 of the deductions applied against this invoice were invalid and, accordingly, reversed the provisional credit in that amount applied to Invoice No. 4986574.

214.    Elizabeth Arden has repeatedly demanded payment of the invoice balance of $12,758.50, but The Merchant has failed to pay this amount or any part thereof.

215.    Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $12,758.50 plus prejudgment interest as allowed by law.

### COUNT XXVI - BREACH OF CONTRACT
### (Purchase Order No. 34402: Invoice 4998234)

216.    On or around June 1, 2009, The Merchant ordered 25,932 units of Ceramide Advanced Time Complex Face Caps – Mini Replica, 25,932 units of Ceramide Eye Time Complex Capsules, and 8,040 units of Ceramide Face Caps from Elizabeth Arden under Purchase Order No. 34402.

217.    On or around June 27, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

218.    The Merchant accepted the goods.

219.    Under the terms of the parties' agreement, payment in the amount of $481,098.60 was due on September 10, 2009.

220.    Elizabeth Arden has performed all obligations on its part to be

1    performed under the contract.

2        221.  The Merchant has failed to pay the $481,098.60, which is due and

3    owing.

4        **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

5    MERCHANT in the amount of $481,098.60 plus prejudgment interest as allowed

6    by law.

7                    <u>**COUNT XXVII - BREACH OF CONTRACT**</u>

8                    **(Purchase Order No. 35428: Invoice No. 5349188)**

9        222.  On or around September 28, 2009, The Merchant ordered 1,928 units

10   each of Millennium Day Renewal Emulsion, Millennium Night Renewal Cream,

11   and Millennium Eye Renewal Cream from Elizabeth Arden under Purchase Order

12   No. 35428.

13       223.  On or around September 28, 2009, Elizabeth Arden shipped the goods

14   ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

15   206(1)(b).

16       224.  The Merchant accepted the goods.

17       225.  Under the terms of the parties' agreement, payment in the amount of

18   $42,300.32 was due on December 12, 2009.

19       226.  On or around June 29, 2010, The Merchant sent a check stub to

20   Elizabeth Arden that listed deductions in excess of the amount of the invoice.

21       227.  Pursuant to the parties' custom and practice, Elizabeth Arden applied a

22   provisional credit to the invoice for the full amount pending investigation and

23   verification of the deductions.

24       228.  Elizabeth Arden subsequently determined that the deductions were

25   invalid and, accordingly, reversed the provisional credit.

26       229.  Elizabeth Arden has repeatedly demanded payment of the invoice

27   amount of $42,300.32, but The Merchant has failed to pay this amount or any part

28   thereof.

230.  Elizabeth Arden has performed all obligations on its part to be performed under the contract.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $42,300.32 plus prejudgment interest as allowed by law.

## COUNT XXVIII - BREACH OF CONTRACT

### (Purchase Order No. 35411: Invoice 5385203)

231.  On or around September 21, 2009, The Merchant ordered 4,800 units of Visible Difference Refining Moisture Complex Cream from Elizabeth Arden under Purchase Order No. 35411.

232.  On or around October 2, 2009, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

233.  The Merchant accepted the goods.

234.  Under the terms of the parties' agreement, payment in the amount of $70,560 was due on December 16, 2009.

235.  On or around December 30, 2009, The Merchant sent payment to Elizabeth Arden in the amount of $186,467.69 against several open invoices, including Invoice No. 5385203, and listed on the check stub deductions totaling $1,634,882.

236.  Pursuant to the parties' customs and practice, Elizabeth Arden applied a provisional credit to the invoices covered by the payment, including Invoice No. 5385203, in the amount of the deductions ($1,634,882) pending investigation and verification of the deductions.

237.  Elizabeth Arden subsequently determined that $67,260.83 of the deductions applied against this invoice were invalid and, accordingly, reversed the provisional credit applied to Invoice No. 5385203.

238.  Elizabeth Arden has repeatedly demanded payment of the invoice

DOCUMENT PREPARED
ON RECYCLED PAPER

1  amount of $67,260.83, but The Merchant has failed to pay this amount or any part
2  thereof.

3      239.  Elizabeth Arden has performed all obligations on its part to be
4  performed under the contract.

5      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
6  MERCHANT in the amount of $67,260.83 plus prejudgment interest as allowed by
7  law.

### COUNT XXIX - BREACH OF CONTRACT

8
9  **(Purchase Order No. 36170; Invoice 783278)**

10      240.  On or around December 4, 2009, The Merchant ordered 7,221 units of
11  Ceramide Time Complex Moisture Cream SPF 15 from Elizabeth Arden under
   Purchase Order No. 36170.

12      241.  On or around December 23, 2009, Elizabeth Arden shipped the goods
13  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
14  206(1)(b).

15      242.  The Merchant accepted the goods.

16      243.  Under the terms of the parties' agreement, payment in the amount of
17  CA$153,559.26 was due on April 22, 2010.

18      244.  Elizabeth Arden has performed all obligations on its part to be
19  performed under the contract.

20      245.  The Merchant has failed to pay the CA$153,559.26, which is due and
21  owing.

22      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
23  MERCHANT in the amount of CA$153,559.26 plus prejudgment interest as
24  allowed by law.

### COUNT XXX - BREACH OF CONTRACT

25
26  **(Purchase Order No. 36167: Invoice No. 5795687)**

27      246.  On or around December 23, 2009, The Merchant ordered 4,800 units
28  of Ceramide Time Complex Moisture Cream SPF 15 from Elizabeth Arden under

1    Purchase Order No. 36167.

2        247.  On or around December 23, 2009, Elizabeth Arden shipped the goods

3    ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

4    206(1)(b).

5        248.  The Merchant accepted the goods.

6        249.  Under the terms of the parties' agreement, payment in the amount of

7    $72,960 was due on March 8, 2010.

8        250.  On or around June 29, 2010, The Merchant sent a check stub to

9    Elizabeth Arden that listed deductions in excess of the amount of the invoice.

10        251.  Pursuant to the parties' customs and practice, Elizabeth Arden applied

11    a provisional credit to the invoice for the full amount pending investigation and

12    verification of the deductions.

13        252.  Elizabeth Arden subsequently determined that the deductions were

14    invalid and, accordingly, reversed the provisional credit.

15        253.  Elizabeth Arden has repeatedly demanded payment of the invoice

16    amount of $72,960, but The Merchant has failed to pay this amount or any part

17    thereof.

18        254.  Elizabeth Arden has performed all obligations on its part to be

19    performed under the contract.

20        **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

21    MERCHANT in the amount of $72,960 plus prejudgment interest as allowed by

22    law.

### COUNT XXXI - BREACH OF CONTRACT

### (Purchase Order No. 36168; Invoice No. 5795685)

24        255.  On or around December 4, 2009, The Merchant ordered 1,440 units of

25    Ceramide Time Complex Moisture Cream SPF 15 from Elizabeth Arden under

26    Purchase Order No. 36168.

27        256.  On or around December 23, 2009, Elizabeth Arden shipped the goods

1  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
2  206(1)(b).

3      257.  The Merchant accepted the goods.

4      258.  Under the terms of the parties' agreement, payment in the amount of
5  $21,888 was due on March 8, 2010.

6      259.  On or around June 29, 2010, The Merchant sent a check stub to
7  Elizabeth Arden that listed deductions in excess of the amount of the invoice.

8      260.  Pursuant to the parties' customs and practice, Elizabeth Arden applied
9  a provisional credit to the invoice for the full amount pending investigation and
10  verifications of the deductions.

11      261.  Elizabeth Arden subsequently determined that the deductions were
12  invalid and, accordingly, reversed the provisional credit.

13      262.  Elizabeth Arden has repeatedly demanded payment of the invoice
14  amount of $21,888, but The Merchant has failed to pay this amount or any part
15  thereof.

16      263.  Elizabeth Arden has performed all obligations on its part to be
17  performed under the contract.

18      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
19  MERCHANT in the amount of $21,888 plus prejudgment interest as allowed by
20  law.

21            **COUNT XXXII - BREACH OF CONTRACT**

22        **(Purchase Order No. 36170; Invoice No. 795378)**

23      264.  On or around December 4, 2009, The Merchant ordered 7,179 units of
24  Ceramide Time Complex Moisture Cream SPF 15 from Elizabeth Arden under

25  Purchase Order No. 36170.

26      265.  On or around February 4, 2010, Elizabeth Arden shipped the goods
27  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
28  206(1)(b).

266. The Merchant accepted the goods.

267. Under the terms of the parties' agreement, payment in the amount of CA$152,666.10 was due on June 4, 2010.

268. Elizabeth Arden has performed all obligations on its part to be performed under the contract.

269. The Merchant has failed to pay the CA$152,666.10, which is due and owing.

WHEREFORE, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$152,666.10 plus prejudgment interest as allowed by law.

## COUNT XXXIII - BREACH OF CONTRACT

### (Purchase Order No. 36170; Invoice No. 802136)

270. On or around December 4, 2009, The Merchant ordered 188 units of Ceramide Time Complex Moisture Cream SPF 15 from Elizabeth Arden under Purchase Order No. 36170.

271. On or around February 18, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

272. The Merchant accepted the goods.

273. Under the terms of the parties' agreement, payment in the amount of CA$3,997.95 was due on June 24, 2010.

274. Elizabeth Arden has performed all obligations on its part to be performed under the contract.

275. The Merchant has failed to pay the CA$3,997.95, which is due and owing.

WHEREFORE, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$3,997.95 plus prejudgment interest as allowed by law.

Document Prepared
on Recycled Paper

## COUNT XXXIV - BREACH OF CONTRACT

### (Purchase Order No. 36757: Invoice No. 6056908)

276.   On or around March 4, 2010, The Merchant ordered 8,840 units each of Ceramide Advanced Time Complex Face Caps – 60 pc. and Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 36757.

277.   On or around March 9, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

278.   The Merchant accepted the goods.

279.   Under the terms of the parties' agreement, payment in the amount of $103,870 was due on May 23, 2010.

280.   Elizabeth Arden has performed all obligations on its part to be performed under the contract.

281.   The Merchant has failed to pay the $103,870, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $103,870 plus prejudgment interest as allowed by law.

## COUNT XXXV - BREACH OF CONTRACT

### (Purchase Order No. 36756: Invoice No. 6067450)

282.   On or around March 4, 2010, The Merchant ordered 4,250 units each of Ceramide Advanced Time Complex Face Caps – 60 pc. and Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 36756.

283.   On or around March 11, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

284.   The Merchant accepted the goods.

1    285.  Under the terms of the parties' agreement, payment in the amount of

2  $49,937.50 was due on May 25, 2010.

3    286.  Elizabeth Arden has performed all obligations on its part to be

4  performed under the contract.

5    287.  The Merchant has failed to pay the $49,937.50, which is due and

6  owing.

7    **WHEREFORE,** ELIZABETH ARDEN prays for judgment against THE

8  MERCHANT in the amount of $49,937.50 plus prejudgment interest as allowed by

9  law.

## COUNT XXXVI - BREACH OF CONTRACT

### (Purchase Order No. 36855: Invoice No. 822747)

288.  On or around March 15, 2010, The Merchant ordered 5,040 units of
Ceramide Advanced Time Complex Face Caps – 60 pc. and 2,520 units of
Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth
Arden under Purchase Order No. 36855.

289.  On or around March 24, 2010, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
206(1)(b).

290.  The Merchant accepted the goods.

291.  Under the terms of the parties' agreement, payment in the amount of
CA$105,187.76 was due on July 22, 2010.

292.  Elizabeth Arden has performed all obligations on its part to be
performed under the contract.

293.  The Merchant has failed to pay the CA$105,187.76, which is due and
owing.

**WHEREFORE,** ELIZABETH ARDEN prays for judgment against THE
MERCHANT in the amount of CA$105,187.76 plus prejudgment interest as
allowed by law.

## COUNT XXXVII - BREACH OF CONTRACT

### (Purchase Order No. 36854: Invoice No. 822748)

294.  On or around March 15, 2010, The Merchant ordered 5,040 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 2,520 units of Ceramide Advanced Time Complex Face Caps - Mini Replica from Elizabeth Arden under Purchase Order No. 36854.

295.  On or around March 24, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

296.  The Merchant accepted the goods.

297.  Under the terms of the parties' agreement, payment in the amount of CA$105,187.76 was due on July 22, 2010.

298.  Elizabeth Arden has performed all obligations on its part to be performed under the contract.

299.  The Merchant has failed to pay the CA$105,187.76, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$105,187.76 plus prejudgment interest as allowed by law.

## COUNT XXXVIII - BREACH OF CONTRACT

### (Purchase Order No. 37092; Invoice No. 1206)

300.  On or around April 9, 2010, The Merchant ordered 60,000 units of Shine Pops from Elizabeth Arden under Purchase Order No. 37092.

301.  On or around April 15, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

302.  The Merchant accepted the goods.

303.  Under the terms of the parties' agreement, payment in the amount of

1  $165,600 was due on June 30, 2010.

2  304. Elizabeth Arden has performed all obligations on its part to be

3  performed under the contract.

4  305. The Merchant has failed to pay the $165,600, which is due and owing.

5  **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

6  MERCHANT in the amount of $165,600 plus prejudgment interest as allowed by

7  law.

### COUNT XXXIX - BREACH OF CONTRACT

### (Purchase Order No. 37093: Invoice No. 12107)

8
9  306. On or around April 9, 2010, The Merchant ordered 1,200 units of

10  Shine Pops from Elizabeth Arden under Purchase Order No. 37093.

11  307. On or around April 15, 2010, Elizabeth Arden shipped the goods

12  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

13  206(1)(b).

14  308. The Merchant accepted the goods.

15  309. Under the terms of the parties' agreement, payment in the amount of

16  $3,312 was due on June 30, 2010.

17  310. Elizabeth Arden has performed all obligations on its part to be

18  performed under the contract.

19  311. The Merchant has failed to pay the $3,312, which is due and owing.

20  **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

21  MERCHANT in the amount of $3,312 plus prejudgment interest as allowed by law.

22  ### COUNT XL - BREACH OF CONTRACT

23  ### (Purchase Order No. 37094; Invoice No. 1208)

24  312. On or around April 9, 2010, The Merchant ordered 4,200 units of

25  Shine Pops from Elizabeth Arden under Purchase Order No. 37094.

26  313. On or around April 15, 2010, Elizabeth Arden shipped the goods

27  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

28  206(1)(b).

DOCUMENT PREPARED
ON RECYCLED PAPER

1    314.   The Merchant accepted the goods.

2    315.   Under the terms of the parties' agreement, payment in the amount of
3  $11,592 was due on June 30, 2010.

4    316.   Elizabeth Arden has performed all obligations on its part to be
5  performed under the contract.

6    317.   The Merchant has failed to pay the $11,592, which is due and owing.

7    **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
8  MERCHANT in the amount of $11,592 plus prejudgment interest as allowed by
9  law.

## COUNT XLI - BREACH OF CONTRACT
### (Purchase Order No. 37095: Invoice No. 1209)

318.   On or around April 9, 2010, The Merchant ordered 9,000 units of
Shine Pops from Elizabeth Arden under Purchase Order No. 37095.

319.   On or around April 15, 2010, Elizabeth Arden shipped the goods
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
206(1)(b).

320.   The Merchant accepted the goods.

321.   Under the terms of the parties' agreement, payment in the amount of
$25,650 was due on June 30, 2010.

322.   Elizabeth Arden has performed all obligations on its part to be
performed under the contract.

323.   The Merchant has failed to pay the $25,650, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
MERCHANT in the amount of $25,650 plus prejudgment interest as allowed by
law.

## COUNT XLII - BREACH OF CONTRACT
### (Purchase Order No. 37092; Invoice No. 43721)

324.   On or around April 9, 2010, The Merchant ordered 47 units of Shine
Pops from Elizabeth Arden under Purchase Order No. 37092.

52171048.1

325.   On or around May 7, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

326.   The Merchant accepted the goods.

327.   Under the terms of the parties' agreement, payment in the amount of $107.64 was due on July 22, 2010.

328.   Elizabeth Arden has performed all obligations on its part to be performed under the contract.

329.   The Merchant has failed to pay the $107.64, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $107.64 plus prejudgment interest as allowed by law.

## COUNT XLIII - BREACH OF CONTRACT
### (Purchase Order No. 37255; Invoice No. 53526)

330.   On or around May 3, 2010, The Merchant ordered 4,410 units each of Millennium Day Renewal Emulsion, Millennium Night Renewal Cream, and Millennium Eye Renewal Cream from Elizabeth Arden under Purchase Order No. 37255.

331.   On or around May 13, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

332.   The Merchant accepted the goods.

333.   Under the terms of the parties' agreement, payment in the amount of $96,755.40 was due on July 27, 2010.

334.   Elizabeth Arden has performed all obligations on its part to be performed under the contract.

335.   The Merchant has failed to pay the $96,755.40, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

DOCUMENT PREPARED ON RECYCLED PAPER

MERCHANT in the amount of $96,755.40 plus prejudgment interest as allowed by law.

## COUNT XLIV - BREACH OF CONTRACT

### (Purchase Order No. 37254; Invoice No. 67881)

336.   On or around May 3, 2010, The Merchant ordered 1,890 units each of Millennium Day Renewal Emulsion, Millennium Night Renewal Cream, and Millennium Eye Renewal Cream from Elizabeth Arden under Purchase Order No. 37254.

337.   On or around May 24, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

338.   The Merchant accepted the goods.

339.   Under the terms of the parties' agreement, payment in the amount of $41,466.60 was due on August 7, 2010.

340.   Elizabeth Arden has performed all obligations on its part to be performed under the contract.

341.   The Merchant has failed to pay the $41,466.60, which is due and owing.

**WHEREFORE,** ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $41,466.60 plus prejudgment interest as allowed by law.

## COUNT XLV - BREACH OF CONTRACT

### (Purchase Order No. 37344; Invoice No. 72953)

342.   On or around May 14, 2010, The Merchant ordered 1,920 units of Eight Hour Cream Skin Protectant from Elizabeth Arden under Purchase Order No. 37344.

343.   On or around May 26, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

1    344.  The Merchant accepted the goods.

2    345.  Under the terms of the parties' agreement, payment in the amount of

3    $14,112 was due on August 9, 2010.

4    346.  Elizabeth Arden has performed all obligations on its part to be

5    performed under the contract.

6    347.  The Merchant has failed to pay the $14,112, which is due and owing.

7    **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

8    MERCHANT in the amount of $14,112 plus prejudgment interest as allowed by

9    law.

## COUNT XLVI - BREACH OF CONTRACT

### (Purchase Order No. 37348; Invoice No. 72954)

348.  On or around May 14, 2010, The Merchant ordered 3,360 units of

Eight Hour Cream Skin Protectant from Elizabeth Arden under Purchase Order No.

37348.

349.  On or around May 26, 2010, Elizabeth Arden shipped the goods

ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

206(1)(b).

350.  The Merchant accepted the goods.

351.  Under the terms of the parties' agreement, payment in the amount of

$24,696 was due on August 9, 2010.

352.  Elizabeth Arden has performed all obligations on its part to be

performed under the contract.

353.  The Merchant has failed to pay the $24,696, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

MERCHANT in the amount of $24,696 plus prejudgment interest as allowed by

law.

## COUNT XLVII - BREACH OF CONTRACT

### (Purchase Order No. 37345; Invoice No. 72955)

354.  On or around May 14, 2010, The Merchant ordered 1,920 units of

1  Eight Hour Cream Skin Protectant from Elizabeth Arden under Purchase Order No.

2  37345.

3      355.   On or around May 26, 2010, Elizabeth Arden shipped the goods

4  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

5  206(1)(b).

6      356.   The Merchant accepted the goods.

7      357.   Under the terms of the parties' agreement, payment in the amount of

8  $14,112 was due on August 9, 2010.

9      358.   Elizabeth Arden has performed all obligations on its part to be

10  performed under the contract.

11      359.   The Merchant has failed to pay the $14,112, which is due and owing.

12      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

13  MERCHANT in the amount of $14,112 plus prejudgment interest as allowed by

14  law.

## COUNT XLVIII - BREACH OF CONTRACT

### (Purchase Order No. 37536; Invoice No. 105169)

15
16      360.   On or around May 28, 2010, The Merchant ordered 9,000 units of

17  High Shine Lip Gloss from Elizabeth Arden under Purchase Order No. 37536.

18      361.   On or around June 10, 2010, Elizabeth Arden shipped the goods

19  ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

20  206(1)(b).

21      362.   The Merchant accepted the goods.

22      363.   Under the terms of the parties' agreement, payment in the amount of

23  $33,930 was due on August 24, 2010.

24      364.   Elizabeth Arden has performed all obligations on its part to be

25  performed under the contract.

26      365.   The Merchant has failed to pay the $33,930, which is due and owing.

27      **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

28

1  MERCHANT in the amount of $33,930 plus prejudgment interest as allowed by

2  law.

### COUNT XLIX - BREACH OF CONTRACT

### (Purchase Order No. 37535; Invoice No. 105170)

366.   On or around May 28, 2010, The Merchant ordered 4,200 units of High Shine Lip Gloss from Elizabeth Arden under Purchase Order No. 37535.

367.   On or around June 10, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

368.   The Merchant accepted the goods.

369.   Under the terms of the parties' agreement, payment in the amount of $15,834 was due on August 24, 2010.

370.   Elizabeth Arden has performed all obligations on its part to be performed under the contract.

371.   The Merchant has failed to pay the $15,834, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $15,834 plus prejudgment interest as allowed by law.

### COUNT L - BREACH OF CONTRACT

### (Purchase Order No. 37537; Invoice No. 107563)

372.   On or around May 28, 2010, The Merchant ordered 9,000 units of High Shine Lip Gloss from Elizabeth Arden under Program Purchase Order No. 37537.

373.   On or around June 10, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

374.   The Merchant accepted the goods.

375.   Under the terms of the parties' agreement, payment in the amount of $33,930 was due on August 24, 2010.

DOCUMENT PREPARED ON RECYCLED PAPER

52171048.1

FOURTH AMENDED COMPLAINT

376. Elizabeth Arden has performed all obligations on its part to be performed under the contract.

377. The Merchant has failed to pay the $33,930, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $33,930 plus prejudgment interest as allowed by law.

## COUNT LI - BREACH OF CONTRACT

### (Purchase Order No. 37350; Invoice No. 123419)

378. On or around May 14, 2010, The Merchant ordered 4,080 units of Eight Hour Cream Skin Protectant from Elizabeth Arden under Purchase Order No. 37350.

379. On or around June 22, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

380. The Merchant accepted the goods.

381. Under the terms of the parties' agreement, payment in the amount of $29,988 was due on September 5, 2010.

382. Elizabeth Arden has performed all obligations on its part to be performed under the contract.

383. The Merchant has failed to pay the $29,988, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $29,988 plus prejudgment interest as allowed by law.

## COUNT LII - BREACH OF CONTRACT

### (Purchase Order No. 37347; Invoice No. 123422)

384. On or around May 14, 2010, The Merchant ordered 3,360 units of Eight Hour Cream Skin Protectant from Elizabeth Arden under the Purchase Order No. 37347.

385. On or around June 22, 2010, Elizabeth Arden shipped the goods

1   ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
2   206(1)(b).

3       386.   The Merchant accepted the goods.

4       387.   Under the terms of the parties' agreement, payment in the amount of
5   $24,696 was due on September 5, 2010.

6       388.   Elizabeth Arden has performed all obligations on its part to be
7   performed under the contract.

8       389.   The Merchant has failed to pay the $24,696, which is due and owing.

9       **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
10  MERCHANT in the amount of $24,696 plus prejudgment interest as allowed by
11  law.

### COUNT LIII - BREACH OF CONTRACT

12

13  **(Purchase Order No. 37349; Invoice No. 123424)**

    390.   On or around May 14, 2010, The Merchant ordered 3,840 units of
14
Eight Hour Cream Skin Protectant from Elizabeth Arden under Purchase Order No.
15  37349.
16
    391.   On or around June 22, 2010, Elizabeth Arden shipped the goods
17
ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-
18  206(1)(b).
19
    392.   The Merchant accepted the goods.
20
    393.   Under the terms of the parties' agreement, payment in the amount of
21  $28,224 was due on September 5, 2010.
22
    394.   Elizabeth Arden has performed all obligations on its part to be
23  performed under the contract.
24
    395.   The Merchant has failed to pay the $28,224, which is due and owing.
25
    **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE
26
MERCHANT in the amount of $28,224 plus prejudgment interest as allowed by
27  law.
28

## COUNT LIV - BREACH OF CONTRACT

### (Purchase Order No. 37453; Invoice No. 39475)

396.   On or around May 24, 2010, The Merchant ordered 4,320 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 2,160 units of Ceramide Advanced Time Complex Face Caps – Mini Replica from Elizabeth Arden under Purchase Order No. 37453.

397.   On or around June 21, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

398.   The Merchant accepted the goods.

399.   Under the terms of the parties' agreement, payment in the amount of CA$90,160.93 was due on October 19, 2010.

400.   Elizabeth Arden has performed all obligations on its part to be performed under the contract.

401.   The Merchant has failed to pay the CA$90,160.93, which is due and owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of CA$90,160.93 plus prejudgment interest as allowed by law.

## COUNT LV - BREACH OF CONTRACT

### (Purchase Order No. 37451; Invoice No. 39476)

402.   On or around May 24, 2010, The Merchant ordered 3,840 units of Ceramide Advanced Time Complex Face Caps – 60 pc. and 1,920 units of Ceramide Advanced Time Complex Face Caps - Mini from Elizabeth Arden under Purchase Order No. 37451.

403.   On or around June 21, 2010, Elizabeth Arden shipped the goods ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-206(1)(b).

1    404.   The Merchant accepted the goods.

2    405.   Under the terms of the parties' agreement, payment in the amount of

3    CA$80,143.06 was due on October 19, 2010.

4    406.   Elizabeth Arden has performed all obligations on its part to be

5    performed under the contract.

6    407.   The Merchant has failed to pay the CA$80,143.06, which is due and

7    owing.

8    **WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

9    MERCHANT in the amount of CA$80,143.06 plus prejudgment interest as allowed

10   by law.

### COUNT LVI - BREACH OF CONTRACT

### (Purchase Order No. 37452; Invoice No. 39477)

408.   On or around May 24, 2010, The Merchant ordered 3,840 units of

Ceramide Advanced Time Complex Face Caps – 60 pc. and 1,920 units of

Ceramide Advanced Time Complex Face Caps - Mini from Elizabeth Arden under

Purchase Order No. 37452.

409.   On or around June 21, 2010, Elizabeth Arden shipped the goods

ordered by The Merchant, which operated as an acceptance pursuant to UCC 2-

206(1)(b).

410.   The Merchant accepted the goods.

411.   Under the terms of the parties' agreement, payment in the amount of

CA$80,143.06 was due on October 19, 2010.

412.   Elizabeth Arden has performed all obligations on its part to be

performed under the contract.

413.   The Merchant has failed to pay the CA$80,143.06, which is due and

owing.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE

MERCHANT in the amount of CA$80,143.06 plus prejudgment interest as allowed

1 | by law.

## COUNT LVII – ACCOUNT STATED

414.   Prior to February 22, 2010, a dispute existed between Elizabeth Arden and The Merchant regarding the amount of the latter's indebtedness for certain deductions (in addition to those alleged in the preceding Counts) that Elizabeth Arden claimed were improper.

415.   On or around February 22, 2010, at a meeting between Elizabeth Arden and The Merchant, the parties agreed that the correct sum owed by The Merchant for the disputed deductions was $655,656.04.

416.   The Merchant promised to pay this amount to Elizabeth Arden.

417.   On May 29, 2010, The Merchant sent a check to Elizabeth Arden in payment of the debt.   However, instead of paying the full amount owed, The Merchant sent a check in the amount of $523,829.35 and listed on the check stub new deductions totaling $131,826.69.

418.   Upon investigation, Elizabeth Arden determined that only $25,896.69 of the new deductions were valid.   The remaining $105,930 in deductions were invalid.

419.   Elizabeth Arden notified The Merchant that these deductions were invalid and demanded payment in the amount of $105,930.   The Merchant has failed to pay this amount or any portion thereof.

**WHEREFORE**, ELIZABETH ARDEN prays for judgment against THE MERCHANT in the amount of $105,930 plus prejudgment interest as allowed by law.

## COUNT LVIII

## (GREEN and THE MERCHANT)

### Violation of Racketeer Influenced and Corrupt Organizations Act

### 18 U.S.C. § 1962(c)

### Summary of RICO Claim

Document Prepared
on Recycled Paper

420.    In addition to the causes of action alleged in Counts I through LVII herein, Elizabeth Arden brings this Count LVIII against The Merchant and Jeff Green pursuant to Section 1964(c) of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968, which confers a private right of action on any person injured in his business or property by reason of a violation of Section 1962 of RICO.

421.    In this case, the RICO violation is the conduct of an enterprise's affairs through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c), namely the use of mail and wire in furtherance of a scheme to defraud or obtain property by means of false or fraudulent pretenses, representations, or promises, in violation of 18 U.S.C. § 1341 and § 1343.

422.    The RICO enterprise is an association-in-fact comprised of several corporations and their President and majority shareholder, Jeff Green ("Green"). The enterprise, known as "US Merchants," is engaged in interstate commerce and provides custom packaging, repackaging, and distribution services to customers throughout the United States and internationally. US Merchants' annual revenues exceed one hundred fifty millions dollars ($150,000,000).

423.    US Merchants is a corrupt organization that for many years has defrauded creditors using a distinct scheme and modus operandi.

424.    The scheme operates as follows. US Merchants orders goods from suppliers who are willing to extend credit to one or more corporate members of the enterprise. Over a course of many months, the enterprise orders a large quantity of goods from the supplier and amasses a substantial account balance.

425.    When the supplier presses for payment, the enterprise provides false assurances that payment is "in process" or that a check has been mailed. Sometimes, US Merchants will fax or email a photocopy of the check – or promise to do so – to lend an air of credibility to the ruse. When the check never arrives, US Merchants tells the supplier that it must have been lost in the mail and that another

1    will be sent promptly.  Other times, US Merchants falsely represents to the supplier
2    that payment has been "approved" but that a check cannot be generated because
3    "the system is down," and that payment will be remitted as soon as functionality is
4    restored.

5         426.   These false representations and promises regarding payment are
6    intended to lull the supplier into believing that US Merchants is acting in good faith
7    and, based on that belief, continue shipping goods to US Merchants on credit.

8         427.   After obtaining the goods on credit, US Merchants fabricates bogus
9    "disputes" about the quality or quantity of goods received, or the amount of
10   allowable credits it is entitled to take against its account balance for such things as
11   product returns and coupon redemptions.   To fabricate these disputes, US
12   Merchants creates sham "debit notes" that purport to list deductions from (i.e.,
13   credits against) its account for defective or damaged product, shorted shipments,
14   consumer product returns, coupon redemptions, retailer returns, and similar items.
15   Frequently these sham debit notes are backdated to make it appear they were
16   generated in the ordinary course of business.  Often, bogus business records are
17   generated to support the claimed deductions.

18        428.   US Merchants submits these sham debit notes and business records to
19   the supplier as justification to pay substantially less than what the enterprise owes.
20   When the supplier objects, US Merchants provides false assurances that the
21   deductions are all valid and submitted in good faith, and that US Merchants is
22   willing to "investigate" the supplier's objections in order to resolve the "dispute."
23   These false assurances of validity and good faith are intended to lull the supplier
24   into continuing its business relationship with US Merchants and, in the meantime,
25   ship more goods on credit.

26        429.   When the creditor eventually files suit for payment, the members of
27   the enterprise who have been named in the dispute assert sham defenses and
28   counterclaims, relying on the bogus debit notes and business records to support

1    their allegations.  Frequently, US Merchants creates new or additional debit notes

2    after the litigation is filed, backdates them, and asserts they were generated in the

3    ordinary course of the parties' business relationship.

4          430.   Additionally, the litigating members of the enterprise employ whatever

5    tactics are expedient to lengthen and complicate the course of the litigation and

6    drive up the creditor's legal costs.

7          431.   Ultimately, the goal of US Merchants' scheme is to coerce the creditor

8    into accepting final payment in an amount substantially less than what the

9    enterprise legitimately owes in "settlement" of the bogus "dispute."

10         432.   US Merchants has employed this scheme to cheat numerous suppliers

11    out of millions of dollars over a period of many years, as demonstrated by the

12    remarkable similarity in the deceptive conduct, false pretenses, and artifices alleged

13    by the plaintiffs in the following cases:

14    *Exclusive Group, LLC d/b/a Binatone North America v. The Merchant of Tennis,*

15    *Inc. and Jeff Green*, Case No. 1:10-cv-00375-JTM-RBC (N.D. Ind. 2010);

16    *Multi-Packaging Solutions, Inc. v. U.S. Merchants Financial Group, Inc., et al.,*

17    Case No. CV-09-2361-MMM (FFmx) (C.D. Cal. 2009);

18    *Rocheux International of New Jersey, Inc. v. U.S. Merchants Financial Group,*

19    *Inc.*, et al., Case No. 06-6147 (D. N.J. 2006);

20    *Fashion World, Ltd. v. Jeff Green, et al.*, Case No. 07-cv-6108 (S.D.N.Y. 2007);

21    *Tegrant Alloyd Brands, Inc. v. The Merchant of Tennis, Inc. d/b/a US*

22    *Merchants*, Case No. 08-C-50041 (N.D. IL 2008);

23    *Pro Med L.L.C. v. U.S. Merchants Financial Group, Inc. and Jeff Green*, Case

24    No. 09-cv-9056 RGK (C.D. Cal 2009)[2]

25         433.   In this case, beginning in 2008 and continuing through October 2010,

26

27    [2]    The details of US Merchants' fraudulent conduct as alleged in these cases are set forth below in paragraphs 484-508, infra, as part of Plaintiff's allegations

28    establishing a pattern to and continuing threat from the enterprise's racketeering activity.

1   the enterprise, under Green's direction, devised and carried out a scheme to swindle

2   Elizabeth Arden using the same false pretenses, artifices, and misrepresentations

3   described above.  During this time period, the enterprise obtained more than $15

4   million in merchandise from Elizabeth Arden on credit with no intention of paying

5   according to the terms of the parties' agreement.

6       434.  To string Elizabeth Arden along, US Merchants employed its usual

7   lulling tactics.  First, in January 2010, the enterprise faked the theft of millions of

8   dollars in "Visible Difference" product from its warehouse.  At the time, US

9   Merchants owed Elizabeth Arden approximately $7.2 million under open invoices

10  for Visible Difference product.  US Merchants used the phony theft to stall payment

11  of these invoices for months, falsely representing to Elizabeth Arden that an

12  insurance settlement was forthcoming and that payment for all Visible Difference

13  invoices would be made when the insurance check was received.

14      435.  Additionally, US Merchants made numerous false representations to

15  Elizabeth Arden that payments were "in process," "scheduled," "in the mail," or

16  delayed because "the system" was not functioning.  These misrepresentations were

17  intended to induce – and did induce – Elizabeth Arden into believing that the

18  enterprise was acting in good faith.

19      436.  During the time period alleged, US Merchants also submitted sham

20  debit notes to Elizabeth Arden purporting to list millions of dollars in deductions

21  that the enterprise fraudulently claimed it was entitled to take against its account

22  with Elizabeth Arden.  Repeatedly, US Merchants submitted knowingly duplicative

23  or otherwise invalid debit notes as supposed justification to pay only a tiny fraction

24  of what was due and owing.  Indeed, by September 2010, US Merchants owed

25  Elizabeth Arden approximately $10.9 million, including more than $3 million for

26  bogus deductions that Elizabeth Arden had demonstrated to US Merchants were

27  duplicative or otherwise invalid.  Nevertheless, on September 29, 2010, US

28  Merchants sent payment of only ten thousand dollars along with new deductions of

1    over $5.7 million -- including $4.1 million in trumped-up "handling charges" to
2    process its own prior invalid debit notes and nearly $1.4 million in other knowingly
3    improper deductions.

4         437.   In carrying out its scheme to  obtain millions of dollars in merchandise
5    from Elizabeth Arden by means of false or fraudulent pretenses, representations and
6    promises, US Merchants deposited material in the mail and transmitted material by
7    wire, in violation of 18 U.S.C. §1341 and § 1343.  The details of the scheme and
8    the defendants' predicate acts in furtherance thereof are alleged with particularity
9    below.

10   **The Enterprise**

11        438.   The Merchant of Tennis, Inc. ("The Merchant") is a corporation duly
12   authorized and existing under the laws of the State of California, operating out of
13   Beverly Hills, California.

14        439.   Diversified Repackaging, Inc. ("Diversified") is a corporation duly
15   authorized and existing under the laws of the State of California, operating out of
16   Beverly Hills, California.

17        440.   U.S. Merchants Financial Group, Inc. ("USM") is a corporation duly
18   authorized and existing under the laws of the State of California, operating out of
19   Beverly Hills, California.

20        441.   Greenline Transportation, Inc. ("Greenline") is a corporation duly
21   authorized and existing under the laws of the State of California, operating out of
22   Beverly Hills, California.   Greenline provides  freight  hauling  services  for
23   Diversified and USM's distribution business.

24        442.   Jeff Green is the owner and President of The Merchant, Diversified,
25   USM, and Greenline.  The only other officer of these corporations is Green's wife.

26        443.   The Merchant, Diversified, USM, Greenline and Green are associated-
27   in-fact as members of a commercial enterprise known as "US Merchants."  The
28   enterprise is engaged in the business of providing packaging, repackaging, and

1    distributing services to customers throughout the United States and internationally.

2    The enterprise operates a single, interactive website, www.u-s-merchants.com,

3    through which the members hold themselves out to the public as a single business

4    enterprise.

5        444. All members of the enterprise operate out of the same offices in

6    Beverly Hills, California.  The members of the enterprise use the same warehouse

7    and distribution centers, which are owned by Green or another entity he controls.

8        445. The Merchant supplies all of US Merchants' employees and performs

9    all of the enterprise's accounting, sales, purchasing, and distribution functions.  All

10   employees of The Merchant, and thus all employees of the enterprise, report

11   directly to Green.

12       446. The members of the enterprise use a single consolidated financial

13   statement.  Green has control over the finances of the enterprise and each of its

14   corporate members.

15   **The Scheme to Swindle Elizabeth Arden**

16   **Submission of Purchase Orders With Fraudulent Intent**

17       447. Between mid-2008 and the present, US Merchants devised and carried

18   out a scheme to obtain millions of dollars in merchandise from Elizabeth Arden by

19   means of false or fraudulent pretenses, representations, and promises.

20       448. Elizabeth Arden incorporates by reference the allegations of

21   paragraphs 425-429, supra.

22       449. During the time period alleged, The Merchant, on behalf of the

23   enterprise and at Green's direction, emailed or faxed more than 50 purchase orders

24   to Elizabeth Arden for specified goods.

25       450. At the time each purchase order was submitted, Green and US

26   Merchants had no intention of paying for the goods in accordance with the terms of

27   the parties' agreement.

28       451. The dates on which The Merchant transmitted the purchase orders to

1    Elizabeth Arden are alleged in the first paragraph of Counts I through LVI supra,

2    which Elizabeth Arden incorporates herein by reference.

3         452.   Green directed The Merchant to fax or email each purchase order in

4    furtherance of the enterprise's scheme, in violation of 18 U.S.C. § 1343.

5    **The Fabricated Warehouse Theft**

6         453.   By the end of 2009, US Merchants owed Elizabeth Arden

7    approximately $15 million.   Of this amount, approximately $7.2 million was for

8    Elizabeth Arden's "Visible Difference" product.   Additional orders of more than $4

9    million were remaining to be shipped.

10        454.   To induce Elizabeth Arden to forbear on its demands for payment of

11   the Visible Difference invoices and continue shipping goods on credit, US

12   Merchants faked the theft of all Visible Difference product from its warehouse.   To

13   carry out this ploy, Green and The Merchant made numerous false representations

14   to Elizabeth Arden by telephone in violation of 18 U.S.C. § 1343.

15        455.   Specifically, on January 15, 2010, Deysi Fisher, an employee of The

16   Merchant acting at Green's direction, falsely represented to Elizabeth Arden

17   employees Amy Getty, Amy Sachs, and Jeffrey Arnold, over the telephone, that US

18   Merchants' entire inventory of Visible Different product had been stolen over the

19   New Year's holiday from its warehouse in Ontario, California.

20        456.   On January 17, 2010, Green made the following false statements and

21   representations to Jeff Arnold, Elizabeth Arden's Senior Vice President, Mass

22   Selling Business Unit, over the telephone: (1) that the alleged theft occurred over

23   the long New Year's weekend; (2) that all of US Merchants' Visible Difference

24   product not on order had been stolen from the warehouse loading dock; (3) that US

25   Merchants would be filing a police report; (4) that US Merchants had notified its

26   insurance carrier and would be submitting an insurance claim; (5) that when US

27   Merchants received the insurance proceeds it would pay all of the outstanding

28   Visible Difference invoices.

457.   On June 30, 2010, Green falsely told Stephen Smith, Chief Financial Officer for Elizabeth Arden, and Beth Schechter, Vice President of Finance for Elizabeth Arden, over the telephone, that US Merchants' insurance claim was progressing and that an indemnity payment from the insurer was expected within 30-60 days.

458.   At the time Green and The Merchant made the statements alleged herein, they knew them to be false.  In truth, there was no theft, no police report, and no insurance claim made or in process.

459.   Green and The Merchant made the false statements alleged herein for the purpose of inducing Elizabeth Arden to forbear on its demands for payment of the Visible Difference invoices, maintain its normal business relationship with US Merchants, and continue shipping goods to US Merchants on credit.

460.   Green and The Merchant transmitted their false statements to Elizabeth Arden by wire in furtherance of the enterprise's fraudulent scheme, in violation of 18 U.S.C. § 1343.

**False Promises and Representations Concerning Payment**

461.   In early March 2010, J.P Morgan Chase Bank was auditing Elizabeth Arden's financials and sought verification of the millions of dollars in receivables due from US Merchants as reflected on Elizabeth Arden's books.

462.   On March 12, 2010, Green, on behalf of the enterprise, sent an email to Jim Youse, Vice President of  Global Credit Risk Management for Elizabeth Arden, as well as Frederick Lee of J.P. Morgan Chase Bank.  In the email, Green falsely represented that four open invoices totaling more than $2.6 million were "scheduled to be paid."  In truth, Green had not approved the invoices for payment and had no intention of paying the invoices according to their terms.

463.   On June 30, 2010, after US Merchants sent Elizabeth Arden a payment of only $350,000 against the enterprise's $10.9 million account balance, along with debit notes listing unexpected and unsupported new "deductions" of over $2

1 | million, the parties had a conference call.  During the call, Smith and Schechter told

2 | Green that it was inconceivable there could be $2 million of deductions to be taken

3 | given the current programs.  Smith and Schechter also reminded Green that he had

4 | promised in February to pay the open Visible Difference invoices in 2-4 months.

5 |     464.  In response, Green made the following false representations to Smith

6 | and Schechter: (1) that the deductions were processed by someone unfamiliar with

7 | the account; (2) that he (Green) did not see the check or debit notes before they

8 | were sent; (3) that the debit notes were prepared in the ordinary course of business

9 | and that appropriate "backup" existed for all the deductions; (4) that the backup was

10 | not provided with the debit notes because the person handling the payment was not

11 | familiar with established protocols; and (5) that the insurance claim for the stolen

12 | Visible Difference product was progressing and that he expected a settlement

13 | within the next 30-60 days.

14 |     465.  In truth, Green directed the preparation of the bogus debit notes,

15 | reviewed them or at least knew their contents before they were sent, instructed The

16 | Merchant to prepare the check for only $350,000, and personally signed the check.

17 | Further, no insurance claim for the allegedly "stolen" Visible Difference product

18 | was pending.

19 |     466.  On July 29, 2010, Green falsely represented to Beth Schechter and

20 | Stephen Smith of Elizabeth Arden, in separate phone calls, that US Merchants was

21 | unable to remit a payment because "the systems were down."  Green promised

22 | Schechter that US Merchants would send a check as soon as the system was

23 | functioning.  These statements were knowingly false.

24 |     467.  In fact, the only payment US Merchants made to Elizabeth Arden after

25 | July 29, 2010 was in late September 2010, when The Merchant, at Green's

26 | direction, sent two checks totaling only $10,000 against the enterprise's $10.9

27 | million account balance, along with new deductions of more than $5.7 million --

28 | including trumped-up "handling charges" of $4.1 million to process its own prior

DOCUMENT PREPARED
ON RECYCLED PAPER

1  fraudulent debit notes and more than $1.3 million in other knowingly improper

2  deductions.

3      468.  Green made the false statements alleged in paragraphs 462, 464 and

4  466 supra for the purpose of deceiving Elizabeth Arden into believing that US

5  Merchants was acting in good faith and would pay what was legitimately owed.

6      469.  Green made the false statements alleged herein in furtherance of US

7  Merchants' scheme to obtain millions of dollars in merchandise from Elizabeth

8  Arden by false or fraudulent pretenses, representations, or promises, in violation of

9  18 U.S.C. § 1343.

10  **The Sham Debit Notes**

11      470.  Between October 2009 and early July 2010, The Merchant, at Green's

12  direction, submitted to Elizabeth Arden knowingly duplicative and otherwise

13  invalid debit notes listing more than $2 million in "deductions" that US Merchants

14  fraudulently claimed it was entitled to take against its open invoices.  The Merchant

15  listed the debit notes on the check stubs of payments mailed to Elizabeth Arden and

16  deducted the total of the debit notes from the amount of the payment.

17      471.  The Merchant, at Green's direction and on behalf of the enterprise,

18  deposited the checks listing the fraudulent debit notes into the U.S. mail on or

19  around the following dates:

20      October 28, 2009

21      November 27, 2009

22      December 30, 2009

23      January 28, 2010

24      February 25, 2010

25      March 30, 2010

26      April 29, 2010

27      May 28, 2009

28      June 29, 2010

472.  At the time The Merchant deposited each check in the mail, The Merchant and Green knew the debit notes and deductions listed on the checks were improper and invalid.

473.  The Merchant, at Green's direction and on behalf of the enterprise, deposited the checks listing the fraudulent debit notes in the mail in furtherance of US Merchants' scheme to defraud Elizabeth Arden, in violation of 18 U.S.C. § 1341.

474.  On July 6, 2010, The Merchant, at Green's direction and on behalf of the enterprise, faxed to Elizabeth Arden new debit notes listing approximately $2.2 million in additional deductions.  Of these new deductions, more than $2 million were knowingly duplicative, fabricated or otherwise invalid.

475.  The Merchant, at Green's direction and on behalf of the enterprise, faxed the debit notes alleged herein to Elizabeth Arden in furtherance of US Merchants' scheme to defraud, in violation of 18 U.S.C. § 1343.

476.  On July 28, 2010, Green wrote an email to Beth Schechter and Stephen Smith of Elizabeth Arden wherein he fraudulently represented that all of the deductions were valid and submitted in the ordinary course of business.  Green knew these statements were false when he wrote them.

477.  On July 29, 2010, Green fraudulently represented to Steve Smith and Beth Schechter of Elizabeth Arden, over the telephone, that US Merchants was still investigating Elizabeth Arden's objections to the invalid debit notes, and that a software upgrade was being made to "the system" and consequently he was unable to generate a payment on other invoices.  Green knew these statements were false when he uttered them.

478.  On September 19, 2010, Green wrote an email to Beth Schechter and Stephen Smith of Elizabeth Arden wherein he fraudulently represented that US Merchants was not aware of any debit notes or deductions that were improper or erroneous.  Green knew his statements were false when he wrote them.

1      479.   On or around September 29, 2010, The Merchant, at Green's direction

2  and on behalf of the enterprise, mailed to Elizabeth Arden two checks totaling

3  approximately $10,000, even though the enterprise owed approximately $10.9

4  million.   On one of the checks, The Merchant listed a debit note in the amount of

5  $365,332 for Elizabeth Arden Products that US Merchants claimed were ordered

6  and later cancelled by Sam's Club, as well as bogus "handling charges" relating to

7  the order.  The Merchant subsequently faxed the debit note to Elizabeth Arden on

8  October 16, 2010.   Nevertheless, US Merchants kept all of the merchandise in

9  question  despite  receiving  a  return  authorization  from  Elizabeth  Arden,

10  demonstrating that US Merchants' submission of the debit note was fraudulent.  In

11  fact, Green and The Merchant had no intention of returning the merchandise when

12  they submitted the debit note to Elizabeth Arden.

13      480.   In submitting the knowingly duplicative or otherwise invalid debit

14  notes  alleged  herein,  and  falsely  representing  that  they  reflected  legitimate

15  deductions taken in good faith, The Merchant and Green intended to induce

16  Elizabeth Arden to act as follows: (1) to apply provisional credits against US

17  Merchants'  account  with  Elizabeth  Arden,  thereby  reducing  the  enterprise's

18  payables; (2) to maintain its normal business relationship with US Merchants; and

19  (3) to continue shipping good to US Merchants on credit.

20      481.   The Merchant and Green also submitted the sham debit notes to set up

21  bogus disputes about the amount due and owing to Elizabeth Arden, which they

22  intended to use to assert sham defenses when Elizabeth Arden ultimately filed suit.

23      482.   After Elizabeth Arden filed this action, The Merchant, at Green's

24  direction  and  on  behalf  of  the  enterprise,  fabricated  new  sham  debit  notes

25  purporting  to  list  additional  deductions  of  more  than  $5.7  million,  including

26  trumped-up "handling charges" of $4.1 million to process the enterprise's own prior

27  fraudulent debit notes and more than $1.3 million in other invalid deductions.

28      483.   The Merchant, at Green's direction, deposited these sham debit notes

1  in the U.S. mail on or around September 29, 2010, in furtherance of US Merchants'

2  scheme to defraud Elizabeth Arden, in violation of 18 U.S.C. § 1341.

3  **Additional Racketeering Activity Establishing**

4  **Pattern and Continuing Threat**

5  484.  The above-described fraudulent scheme has been used by US

6  Merchants to swindle numerous other creditors over a period of many years.  The

7  following examples demonstrate a long-term pattern of racketeering activity that

8  poses a continuing threat of injury to other potential creditors involved in interstate

9  commerce.

10  **The Scheme to Swindle Exclusive Group, LLC**

11  485.  Between April 2009 and March 2010, The Merchant, at Green's

12  direction and on behalf of the enterprise, mailed and/or faxed purchase orders to

13  Exclusive Group, LLC ("Exclusive Group") for consumer electronics products

14  having an agreed price of approximately $1.1 million.  At the time these purchase

15  orders were sent, US Merchants had no intention of paying for the merchandise in

16  accordance with the terms of the parties' agreement.

17  486.  From July 2009 through April 2010, The Merchant and Green, acting

18  for the enterprise, made numerous false representations to Exclusive Group, by

19  telephone and email, that invoices had been approved for payment and that checks

20  had been processed, issued and mailed.

21  487.  For example, on April 14, 2010, Green and Catalin Oprisan, an

22  employee of The Merchant, told Exclusive Group over the telephone that they

23  would scan and email a copy of a check US Merchants supposedly sent to

24  Exclusive Group, along with overnight tracking information evidencing the mailing

25  of the check.  Exclusive Group never received the check, a copy of the check or any

26  tracking information.

27  488.  On April 19, 2010, Catalin, at Green's direction, falsely represented to

28  Exclusive Group in an email that a check in the amount of $300,000 had been

1  issued and mailed, and that The Merchant intended to provide a copy of the check

2  as proof but was unable to do so because the computers were down.

3      489.  Beginning in May 2010, The Merchant, at Green's direction, began

4  mailing and/or faxing knowingly false and fraudulent debit notes to Exclusive

5  Group purporting to deduct hundreds of thousands of dollars for allegedly

6  "defective" products supplied by Exclusive Group, even though US Merchants had

7  resold all of the merchandise to Sam's Club and received full payment.

8      490.  The Merchant and Green mailed and faxed all of the purchase orders

9  and bogus debit notes, and made all of the false representations concerning

10  payments alleged herein, in furtherance of US Merchants' scheme to defraud

11  Exclusive Group, in violation of 18 U.S.C. § 1341 and § 1343.

12  **The Scheme to Swindle Great Western Industries, Inc.**

13      491.  Between July 2008 and October 2008, The Merchant, at Green's

14  direction and on behalf of the enterprise, mailed and/or faxed purchase orders to

15  Great Western Industries, Inc. ("GWI"), a Delaware corporation, for 7.7 million

16  high-density, polyethylene boxes, on credit.  At the time these purchase orders were

17  sent, US Merchants had no intention to pay for the boxes in accordance with the

18  terms of the parties' agreement.

19      492.  From December 2008 through mid-February 2009, after GWI

20  threatened to halt shipments of additional boxes until overdue invoices were

21  satisfied, The Merchant and Green made numerous false and deceptive

22  representations to GWI, by telephone and email, that payments on overdue invoices

23  were approved and in process.

24      493.  Additionally, between January 28, 2009 and April 2009, The Merchant

25  and Green mailed and faxed to GWI knowingly bogus debit notes in the amount of

26  $487,152 for "defective" boxes they claimed to have received from GWI -- even

27  though US Merchants had used and resold all of the boxes and received full

28  payment.  The Merchant and Green knew that the debit notes were fraudulent when

1  sent.[3]

2      494.   The Merchant and Green mailed and faxed all of the purchase orders

3  and sham debit notes, and made all of the false representations about payment of

4  overdue invoices alleged herein, in furtherance of a scheme to defraud GWI, in

5  violation of 18 U.S.C. § 1341 and § 1343.

6  **The Scheme to Swindle Rocheux International**

7      495.   In 2005 and 2006, The Merchant, at Green's direction and on behalf of

8  the enterprise, mailed and/or faxed purchase orders to Rocheux International of

9  New Jersey, Inc. ("Rocheux") for $3.9 million in plastic thermoforming materials

10 for use in US Merchants' packaging business.  At the time the purchase orders were

11 sent, US Merchants had no intention of paying for the materials in accordance with

12 the terms of the parties' agreement.

13     496.   From May 2006 through September 2006, after US Merchants'

14 account became seriously delinquent, The Merchant and Green made numerous

15 false and deceptive representations to Rocheux, by telephone and email, regarding

16 payments approved, processed and mailed.  The defendants variously claimed that

17 checks were "in the mail" or that the delays were attributable to a new computer

18 system and accounting problems.

19     497.   During the same time period, The Merchant and Green made

20 numerous false and deceptive statements to Rocheux, by telephone and email, that

21 material shipped by Rocheux was defective and non-conforming -- even though US

22 Merchants had used all of the material in its business and received full payment

23 from its customers.

24     498.   The Merchant and Green mailed all of the purchase orders and

25 transmitted all of the false statements about payments alleged herein in furtherance

26 of US Merchants' scheme to defraud Rocheux, in violation of 18 U.S.C. § 1341 and

27

28 [3]    In the ensuing litigation between the parties, The Merchant asserted a sham
counterclaim against GWI based on the fraudulent debit notes.

1  § 1343.

2  **The Scheme to Swindle Fashion World**

3      499.   In 2005 and 2006, The Merchant, at Green's direction and on behalf of

4  the enterprise, mailed and/or faxed purchase orders for handbags and other fashion

5  apparel from Fashion World, Ltd. ("Fashion World"), a British Virgin Island

6  corporation, on credit.   The terms of the parties' agreement required The Merchant

7  to remit royalties to Fashion World based on a percentage of product sales to

8  approved vendors.

9      500.   At the time the purchase orders were sent, US Merchants had no

10  intention of remitting to Fashion World the royalties required by the parties'

11  contract.

12      501.   Throughout 2006, The Merchant, at Green's direction and on behalf of

13  the enterprise, deliberately and intentionally underreported to Fashion World,

14  through the mailing of fraudulent inventory and sales statements, the amount of

15  product US Merchants had sold and the royalties due.

16      502.   During the same time period, The Merchant, at Green's direction and

17  on behalf of the enterprise, mailed payments to Fashion World reflecting only half

18  the royalties due and owing, using the fraudulent inventory and sales statements to

19  justify the shorted payments.

20      503.   Additionally, The Merchant sold the licensed apparel to unauthorized

21  vendors and attempted to conceal these sales through false inventory and sales

22  statements mailed and/or faxed to Fashion World, in order to misappropriate and

23  convert royalties due to Fashion World.

24      504.   The Merchant and Green mailed and/or faxed the purchase orders and

25  fraudulent inventory and sales reports to Fashion World in furtherance of the

26  enterprise's scheme to defraud Fashion World, in violation of 18 U.S.C. § 1341 and

27  § 1343.

28  **The Scheme to Swindle Tegrant Alloyd Brands**

505.   In 2006 and 2007, The Merchant, at Green's direction and on behalf of the enterprise, mailed and/or faxed purchase orders to Tegrant Alloyd Brands ("Tegrant") for thermopackaging materials at a cost of more than $3.3 million.  At the time the purchase orders were sent, US Merchants had no intention of paying for the materials in accordance with the terms of the parties' agreement.

506.   US Merchants used all of the materials in its packaging business and received full payment from its customer for all products packaged with the materials.  Nevertheless, in July 2007, The Merchant, at Green's direction and on behalf of the enterprise, fabricated and mailed to Tegrant a sham debit note purporting to deduct $1.3 million for alleged "substandard" quality of all the materials supplied by Tegrant during the course of the parties' relationship.  The Merchant and Green knew the debit note was bogus when sent.

507.   US Merchants used the bogus debit note a to assert a sham counterclaim against Tegrant in the ensuing litigation.

508.   The Merchant and Green mailed all of the purchase orders and the sham debit note to Tegrant in furtherance of US Merchants' scheme to defraud Tegrant, in violation of 18 U.S.C. § 1341.

**Injury**

509.   The Merchant's and Green's predicate acts, as alleged herein, induced Arden to (1) believe that US Merchants was acting in good faith, (2) forbear on its demands for payment of overdue invoices, (3) continue its normal business relationship with US Merchants, and (4) honor US Merchants' purchase orders for more goods.

510.   But for US Merchants' false and fraudulent assurances of good faith, false representations concerning payments, and fraudulent submission of bogus debit notes, Elizabeth Arden would not have honored US Merchants' purchase orders submitted during the time period alleged.

511.   Accordingly, US Merchants' scheme and the defendants' predicate

DOCUMENT PREPARED
ON RECYCLED PAPER

1  acts in furtherance thereof have proximately caused injury to Arden's business and

2  property in an amount totaling millions of dollars.

3     **WHEREFORE**, ELIZABETH ARDEN prays for judgment against The

4  Merchant and Jeff Green awarding threefold the actual damages sustained by

5  reason of the defendants' violation of Section 1962 of RICO; for the cost of this

6  suit including a reasonable attorney's fee; and for all other relief to which Elizabeth

7  Arden is entitled.

8  ### COUNT LIX – FRAUD

9  ### GREEN and THE MERCHANT

10     512.   Elizabeth Arden incorporates by reference the allegations set forth in

11  paragraphs 7-19 and Counts 5-15, 19, 23-25, 27-28, 30-31 and 54-57 herein.

12     513.   Elizabeth Arden incorporates by reference the allegations set forth in

13  paragraphs 433-437, 447-452, 454-459, 461-468, and 470-480, supra.

14     514.   Elizabeth Arden reasonably relied upon The Merchant's and Green's

15  false representations and false assurances of good faith.  Based on this reliance,

16  Elizabeth Arden granted credits against US Merchants' unpaid invoices in the

17  amount of the fraudulent deductions, maintained its normal commercial relationship

18  with The Merchant and Green, and continued to honor and fill The Merchant's

19  purchase orders.  During the time period in which US Merchants carried out its

20  fraudulent scheme, Elizabeth Arden shipped more than $14 million in merchandise

21  to the enterprise on credit.  But for the defendants' lulling conduct alleged herein,

22  Elizabeth Arden would have refused to ship most or all of the merchandise.

23     515.   As a result of The Merchant's and Green's fraudulent conduct alleged

24  herein, Elizabeth Arden suffered injury and damage in an amount to be determined

25  at trial but believed to be in the millions of dollars.

26     **WHEREFORE**, ELIZABETH ARDEN prays for judgment against GREEN

27  and THE MERCHANT, including punitive damages, in an amount to be

28  determined at trial.

DOCUMENT PREPARED
ON RECYCLED PAPER

# LX – PIERCING THE CORPORATE VEIL

## THE MERCHANT AND USM[4]

516.  Elizabeth Arden incorporates by reference the allegations of paragraphs 438-446, supra.

517.  The Merchant and USM both do business under the name "US Merchants," which, in reality, is a registered d/b/a of USM.

518.  The Merchant and USM are mere instrumentalities of one another. Green dominates and controls both corporations to such an extent that their independence is, in fact, non-existent.  Green makes all decisions for The Merchant and USM, including decisions about purchasing and payment, without the oversight of a Board of Directors.  Green publicly refers to The Merchant, USM, and the other corporate entities he operates from the Beverly Hills address as "The Jeff Green Empire."

519.  The defendants purposefully blur the corporate distinctions between The Merchant and USM in order to mislead or confuse creditors and customers about which entity they are doing business with.  Both entities display only the "US Merchants" trade name on their commercial and business forms, including purchase orders and invoices.  Further, although the defendants' common web site solicits business on behalf of The Merchant and USM, the website refers to them both as "US Merchants" without distinction.  Accordingly, customers and creditors doing business with the defendants do not know that different legal entities exist, or which of those entities is actually buying or selling the goods or services in question.

520.  Green himself gives purposefully confusing, inconsistent or

---

[4]    In view of the Court's ruling on the defendants' motion to dismiss the second amended complaint dated July 25, 2011, Elizabeth Arden does not allege herein that Jeff Green is the alter ego of the corporate defendants because, without the benefit of discovery, Elizabeth Arden cannot allege that Green commingled personal funds with corporate funds.  If discovery reveals that Green in fact commingled personal and corporate funds, Elizabeth Arden reserves the right to replead its alter ego theory.

DOCUMENT PREPARED
ON RECYCLED PAPER

1 | incomplete answers when examined under oath about the corporate structure and

2 | operations of The Merchant and USM.  Sometimes Green uses the phrase "US

3 | Merchants" to refer specifically to the legal entity USM.  Other times he testifies

4 | that "US Merchants" is the name by which The Merchant does business.

5 |     521.  Furthermore, sometimes Green testifies that USM is a "holding

6 | company" that has no business operations of its own, and that The Merchant

7 | operates all of the packaging and distribution functions of the enterprise.  Other

8 | times, Green testifies that USM is the entity that actually operates the packaging

9 | and distribution business.

10 |     522.  When selling merchandise to Costco and Sam's, as well as to other

11 | companies, the defendants utilize purchase orders, letterhead, invoices, fax

12 | transmittal forms, and email addresses that bear only the moniker "US Merchants,"

13 | the registered d/b/a of USM.  Because of this, when customers remit payment, the

14 | checks are made payable to "US Merchants."  Green himself directs where these

15 | funds are deposited.  Upon information and belief, Green controls and manipulates

16 | what funds are allocated to The Merchants, USM, and the other corporate entities

17 | Green operates, without regard to which entity is legally entitled to receive the

18 | funds, so as to hide assets from these entities' creditors.

19 |     523.  Because USM, The Merchant, and the other corporate entities Green

20 | operates all use the same business forms bearing only the "US Merchants" moniker,

21 | vendors who sell goods to any of these entities typically list the buyer as "US

22 | Merchants" on their invoices.  Upon information and belief, Green controls and

23 | manipulates what funds are used to pay these invoices without regard to whether

24 | the liability or the funds used to make payment are properly attributable to the

25 | particular entity.  Green sometimes causes The Merchant to pays USM's expenses

26 | and creditors; other times, Green causes USM to pay The Merchant's expenses and

27 | creditors.

28 |     524.  Because Green has exclusive and total control over The Merchant's

1    and USM's operations and finances, he has unfettered power to transfer assets
2    between the two corporations, and from the corporations to himself. Consequently,
3    Green has the ability to hide assets from creditors through manipulation of inter-
4    company transfers and bookkeeping entries.

5        525. Throughout the time period alleged herein, the purchase orders
6    received by Elizabeth Arden bore the moniker "US Merchants," the registered d/b/a
7    of USM. However, the payments and debit notes alleged herein came from The
8    Merchant, and the checks were drawn on The Merchant's bank account. Green
9    used The Merchant and USM interchangeably in his transactions and
10   communications with Elizabeth Arden, and ignored the corporate separateness of
11   these entities.

12       526. Under the circumstances alleged herein, it would be unjust and
13   inequitable to adhere to the fiction of a separate corporate existence between The
14   Merchant and USM. The defendants purposefully conflate the entities so that,
15   whenever expedient, they can dispute which entity is legally liable to a particular
16   creditor. Even once that issue is resolved, Green can readily transfer assets between
17   and among the corporations and himself to place them beyond the reach of
18   creditors, or to force judgment holders to institute additional, costly and protracted
19   legal proceedings to collect the sum awarded.

20       527. By acting and portraying themselves as a single enterprise, and by
21   entering into the transactions with Elizabeth Arden alleged herein as a single
22   enterprise, the defendants are jointly and severally liable for the claims and
23   damages alleged herein.

24   **ADDITIONAL DEFENDANTS.**

25       528. ELIZABETH ARDEN incorporates and realleges paragraphs 1
26   through 527, above, as if fully set forth herein.

27       529. Diversified is a California corporation with its principal place of
28   business in Beverly Hills, California. Diversified is a corporation controlled by

1   Green.

2       530.   USMC is a corporation with its principal place of business in Quebec,

3   Canada.  USMC is a corporation controlled by Green.

4       531.   ELIZABETH ARDEN is informed and believes, and on that basis

5   alleges that Diversified and USMC are the agents, representatives, co-actors, and/or

6   co-conspirators of Green, The Merchant, and/or USM, and are responsible in some

7   way and/or manner for the acts and occurrences alleged in paragraphs 1 through

8   527, above, whether such acts and occurrences were committed intentionally,

9   negligently, recklessly, or otherwise, and that Diversified and USMC are liable for

10  ELIZABETH ARDEN's damages.

11      **WHEREFORE**, ELIZABETH ARDEN prays for judgment holding GREEN,

12  THE MERCHANT, USM, Diversified, and USMC jointly and severally for all

13  damages awarded to Elizabeth Arden under Counts I through LIX herein.

14

15  Dated:  August 1, 2012                    JAMES R. EVANS, JR.
                                             **FULBRIGHT & JAWORKSI, L.L.P.**
16

17

18

19                                           By _____

20                                               JAMES R. EVANS, JR.
                                                 Attorneys for Plaintiff and
21                                               Counterdefendant
                                                 ELIZABETH ARDEN, INC.
22

23

24

25

26

27

28

DOCUMENT PREPARED
ON RECYCLED PAPER

**PROOF OF SERVICE**

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

I am employed in the County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is 555 South Flower Street, Forty-First Floor, Los Angeles, California 90071.

On August 1, 2012, I served the foregoing document(s) described as: on interested parties in this action as follows:    *FOURTH AMENDED COMPLAINT*

David W. Affeld, Esq.
Gregg D. Zucker, Esq.
AFFELD GRIVAKES ZUCKER LLP (US)
12400 Wilshire Blvd., Suite 1180
Los Angeles, CA 90025
Tel: 310-979-8700
Fax: 310-979-8701
dwa@agzlaw.com
gz@agzlaw.com

☒    **(BY MAIL)** I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the United States Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing affidavit.

☐    **(BY PERSONAL SERVICE)** I caused the aforementioned document to be placed in an envelope for personal delivery by courier addressed as stated above.

☐    **(BY FEDERAL EXPRESS)** I caused the aforementioned document to be placed in an envelope or package designated by Federal Express, with delivery fees fully paid and addressed as stated above.

☐    **(BY NEF)** The foregoing document will be served by the court via NEF and hyperlink to the document. On July 30, 2012, I checked the CM/ECF docket for this civil case and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated above.

DOCUMENT PREPARED
ON RECYCLED PAPER

☐   **(BY EMAIL)**  I caused said document(s) to be sent via e-mail to the interested parties at the e-mail address as stated above.

☐   **(BY FACSIMILE)**  I caused said document(s) to be transmitted electronically to the interested parties at the facsimile numbers as above.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

Executed on August 1, 2012 at Los Angeles, California.

Rhonda M. Cole

- 2 -